## The State, ex rel. Lewis et al., *v.* Smith, Auditor of Marion County.

[No. 19,752.   Filed February 28, 1902.   Rehearing denied May 23, 1902.]

Taxation.—*Real Estate.*—*Mortgage Deduction.*—*Constitutional Law.*— The act of 1899 (Acts 1899, p. 422, §8417a *et seq.* Burns 1901), authorizing the deduction, for the purpose of taxation, of mortgage indebtedness, not exceeding $700, from the assessed valuation of real estate, such deduction not to be greater than one-half of the assessed valuation thereof, is not violative of the provisions of the State Constitution requiring equality and uniformity in taxation (§1, article 10, and §22, article 4, State Constitution), nor of the fourteenth amendment to the United States Constitution relative to the right to the equal protection of the laws.

From Marion Circuit Court; *H. C. Allen*, Judge.

Mandamus by State on the relation of Martha Lewis and others against Harry B. Smith, auditor of Marion county, to compel such auditor to allow a deduction from the assessed valuation of relators' real estate on account of a mortgage indebtedness thereon. From a judgment in favor of respondent on demurrer to alternative writ, relators appeal. *Reversed.*

*W. L. Taylor*, Attorney-General, *Merrill Moores, C. C. Hadley* and *W. B. Schwartz*, for appellants.

*R. O. Hawkins* and *H. E. Smith*, for appellee.

Gillett, J.—This is an action of mandamus instituted by the appellant's relators against the appellee. The appellee filed a demurrer to the application and alternative writ, which was sustained by the court below. To this ruling the relators excepted, and refused to plead further, and from the final judgment against them, that was subsequently rendered, they prosecute this appeal.

Counsel discuss but one question in this case, namely, the constitutionality of an act of the General Assembly of this State entitled, "An act concerning the taxation of real estate

State, *ex rel., v.* Smith.

encumbered by mortgage, and declaring an emergency."
Acts 1899, p. 422, §8417a *et seq.* Burns 1901, §6272a *et
seq.* Horner 1901. The first three sections of the act are as
follows:

Section 1. "Be it enacted by the General Assembly of
the State of Indiana, That any person being the owner of
real estate liable for taxation within the State of Indiana,
and being indebted in any sum, secured by mortgage upon
real estate, may have the amount of such mortgage indebted-
ness, not exceeding $700, existing and unpaid upon the first
day of April in any year, deducted from the assessed valu-
ation of mortgage premises for that year, and the amount of
such valuation remaining after such deduction shall have
been made shall form the basis for assessment and taxation
for said real estate for said year. Provided, That no deduc-
tion shall be allowed greater than one-half of such assessed
valuation of said real estate. Section 2. Any person de-
siring to avail himself, or herself, of the provisions of this
act shall, between the first day of March and the first day
of May of each year, file with the auditor of the county
wherein said real estate is situated a sworn statement of the
amount of such mortgage indebtedness existing and unpaid
on the first day of March of that year, giving the name and
residence of the mortgagee, and shall also give the name and
residence of the assignee or *bona fide* owner or holder of
said mortgage, if known, and if not known, said person shall
state that fact, and shall also state the record and page
where said mortage is recorded, and a brief description of
the real estate upon which such incumbrance exists. Sec-
tion 3. The county auditor with whom such statement is
filed, in case the money, notes or credits evidenced by such
mortgage indebtedness be liable for taxation in any county
in the State of Indiana, other than the one wherein such
real estate is situate, shall immediately certify and transmit
a copy of such sworn statement to the auditor of the county
wherein the mortgagee, assignee or *bona fide* holder or

State, *ex rel.*, *v.* Smith.

owner of said mortgage resides, or wherein the money, notes or credits evidenced by such mortgage is otherwise taxable." The fourth section of the act prescribes a penalty for wilfully making a false statement under section two thereof. The fifth and last section declares the existence of an emergency for the immediate taking effect of the act.

Counsel for appellee claim that the act in question is unconstitutional and they especially insist that it contravenes §1 of article 10 of our State Constitution. That section is as follows: "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious, or charitable purposes, as may be especially exempted by law."

We approach the consideration of this case with a deep sense of its importance, not only because constitutional questions are involved, but because we realize that this act, if upheld, will be a large factor in our revenue system. The people, in their grant of power to the agencies of government, ordained that "the powers of government are divided into three separate departments: the legislative, the executive, including the administrative, and the judicial." Constitution §1, art. 3. These departments are coördinate. The Constitution requires that any person elected or appointed to any office thereunder shall, before entering on the duties thereof, take an oath or affirmation to support such Constitution. §4 art. 15. The judiciary do not lay claim to a conscience that is quickened beyond that of any other official. The courts do not sit for the purpose of revising or obstructing legislative action, but to enforce the legislative will. Where, however, an enactment of the General Assembly falls without the domain of legislative power, or impinges on the limitations with which the people, in their

sovereign capacity, have hedged the grant of legislative power about, a court that sits to apply the law as between litigants refuses to enforce it, because the judge, acting on the responsibility of his oath, must enforce the will of the people as declared in their primal social compact, rather than the will of their agent in another department of the government. The task of declaring a legislative enactment unconstitutional is at once both solemn and delicate, and, while the courts will not decline this responsibility, yet they approach such a duty in a spirit of profound caution and circumspection, and with a disposition to enforce the legislative will by resolving all ultimate reasonable doubts in its favor. It is with this disposition of mind that we approach this question.

The power of taxation is an incident of sovereignty, and is possessed by the government without being expressly conferred by the people. *State Board, etc., v. Holliday,* 150 Ind. 216. The power belongs to that class of powers known as political powers, and while, in the genesis of popular government, it was occasionally exercised by the executive branch of the government, yet it is now well settled that the power of taxation is purely a legislative function. *State Board, etc., v. Holliday, supra; Union Tel. Co. v. Mayer,* 28 Ohio St. 521. "The extent to which it [the taxing power] shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the states commit the exercise of the power. The discretion is restrained only by the will of the people, expressed in the state constitutions or through elections, and by the condition that it must not be so used as to burden or embarrass the operations of the National Government." *Lane County v. State of Oregon,* 7 Wall. 71, 77, 19 L. Ed. 101. And see, also, *Sharpless v. Mayor of Philadelphia,* 21 Pa. St. 147, 160, 59 Am. Dec. 759. This doctrine is even more forcibly stated by Judge Cooley in his work on

Taxation (p. 5). He there says: "Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue purposes. And not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried to any extent which the government may find expedient. It may therefore be employed again and again upon the same subjects, even to the extent of exhaustion and destruction, and may thus become in its exercise a power to destroy. If the power be threatened with abuse, security must be found in the responsibility of the legislature which imposes the tax to the constituency who are to pay it. The judiciary can afford no redress against oppressive taxation, so long as the legislature, in imposing it, shall keep within the limits of legislative authority and violate no express provision of the constitution. The necessity for imposing it addresses itself to the legislative discretion, and it is or may be an urgent necessity which will admit of no property or other conflicting right in the citizen while it remains unsatisfied."

Our State Constitution does, however, contain some limitations on the legislative authority to tax. These limitations are found in the section of the Constitution hereinbefore quoted, and in another section thereof, to which attention will hereafter be directed. Does the act in question violate the constitutional requirement of equality?

It is the theory of every republican government that taxes should be levied equally, but this is impossible, even in the simplest state of society; and the difficulty becomes more and more pronounced as our civilization becomes more complex, because the circumstances and pursuits of the people become more diversified. "A just and perfect system

of taxation," says Chancellor Kent, "is yet a *desideratum* in civil government." (2 Com., 332). "Perfectly equal taxation," it has again been said, "will remain an unattainable good as long as laws and government and men are imperfect." Sharswood, J., in *Grim* v. *School District,* 57 Pa. St. 433, 437, 98 Am. Dec. 237.

As a general rule, taxes due on property are not debts of the owner thereof. *Thompson* v. *McCorkle,* 136 Ind. 484, 43 Am. St. 334. But it is nevertheless competent for the legislature so to provide. *Snipe* v. *Shriner,* 44 N. J. L. 206. If it can be fairly said that the equality limitation in the Constitution was designed to prevent inequalities in the assessment of different tracts of real estate, considered as a matter wholly apart from the interests of their owners therein, then there would be room for serious doubt as to the justification of legislation that discriminates within the class, and which permits a deduction of $700 in the assessment on one tract of mortgaged real estate, while that right is wholly denied as to an adjoining unincumbered tract of real estate. We do not think, however, that the people of Indiana, in adopting the Constitution of the State, had any such view. Taxes must be paid by persons, unless property is sacrificed therefor; and, moreover, the whole idea of values is one of the artificialities of life. It therefore follows that, when the people put the equality limitation upon the power to tax, they intended thereby to protect the owners of property. We must therefore regard the limitation that taxation must be equal as being satisfied when there is no discrimination as between taxpayers. Clearness is necessary here, however; and we therefore suggest, by way of emphasis, that our present statements relate only to the requirement of *equality* in taxation. Still dealing with this particular portion of the limitation, we next call attention to the fact that the selection of some objects for taxation, and the omission of others, or even the selection of but a few objects for taxation, does not necessarily disturb the

rule of equality, provided that the result of the imposition of the burden is so to diffuse itself ultimately among those who ought to bear their share of it as not unreasonably to lay it on particular classes of taxpayers, to the ease of the rest. "Let it reach all of a class," says Judge Cooley, "either of persons or things, it matters not whether those included in it be one or many, or whether they reside in any particular locality or are scattered all over the state. But when, for any reason, it becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible." Cooley on Taxation, 169.

We may freely grant that, with this act in force, it will produce inequalities as between taxpayers in any given year, but we confidently affirm that it is beyond the ken of the most astute to say who will receive the most benefit from the act in the future. If one man gains an advantage over his neighbor this year by means of this statute, it cannot be said that the latter's property affairs may not hereafter be in such condition that he will not receive more of benefit from the statute than the former. As the act is presumed to represent a constitutional exercise of the legislative power, it devolves upon those who would assail it as unequal or class legislation to point out what class of persons will hereafter be prejudiced thereby. Laws are rules of action projected through and beyond the multifarious interests and affairs of mankind; and it is too much to affirm that they must at all times operate fairly, as applied to any individual, and particularly, as we have shown, is it too much to affirm that a tax law must always so operate.

If the power of taxation is a legislative function, and if it be true that in any system of taxation, however wisely framed, disproportionate shares of the public burden will occasionally be thrown on some persons, it must needs follow that the courts must admit that there exists in the Gen-

eral Assembly a large measure of discretion in the enactment of a scheme of taxation. To borrow something from the language and thought of another court: It is the peculiar duty of a court to keep the first lines of the constitution clear, and not to stretch its power to correct legislative abuses. We do not mean to hold that statutory provisions relative to the levying of taxes might not so far on their face manifest, by invidious discriminations between persons or property, their unequal and unjust character, as to call on the courts to refuse to enforce them; but as observed by Gibson, C. J., in *Kirby* v. *Shaw,* 19 Pa. St. 258, 261, "It is illogical to argue from an extreme case; or from the abuse of power to a negation of it. Every authority, however indispensable, may be abused; and if it might not, it would be powerless for good."

As to the requirement of uniformity, we have to say that the act in question purports to be a law that is uniform throughout the State, and, as it permits all persons to take advantage of it when their circumstances bring them within its operation, we are of the opinion that it does not violate that requirement of the Constitution. *Cleveland, etc., R. Co.* v. *Backus,* 133 Ind. 513, 18 L. R. A. 729; *Pittsburgh, etc., R. Co.* v. *Backus,* 133 Ind. 625; *Gilson* v. *Board, etc.,* 128 Ind. 65, 11 L. R. A. 835.

It is our judgment that every limitation upon the power to tax that is found within the limits of §1 of art. 10 of our Constitution was intended, at least primarily, to protect the taxpayer; but it must be admitted that the latter part of the section, requiring the General Assembly to prescribe such regulations as shall secure a just valuation for taxation of all property that the Constitution does not authorize to be exempted, looks to still further protecting the taxpayer in the matter of equality, by prescribing a duty upon the General Assembly to provide for the securing of a *just* valuation for taxation of *all* property, except as aforesaid. The decisions of this court have thoroughly committed it to the

proposition that legislative enactments that purport to grant exemptions not falling within the class of exemptions mentioned in the Constitution are void. *State, ex rel., v. Workingmen's, etc., Assn.,* 152 Ind. 278; *Harn v. Woodard,* 151 Ind. 132; *Deniston v. Terry,* 141 Ind. 677; *Warner v. Curran,* 75 Ind. 309; *State, ex rel., v. City of Indianapolis,* 69 Ind. 375, 35 Am. Rep. 223.

The enactment in question cannot be supported as an exemption law. It is to be remembered, however, that the regulations that the General Assembly are required to enact must look to the securing of a *just* valuation, as well as to a valuation of *all* property that the Constitution subjects to taxation. We cannot subordinate the one requirement to the other. Indeed, it is a rule of construction that a constitution is an instrument of such high and solemn import that every word thereof is to be regarded as though it was hammered into place. The question therefore arises whether it is competent for the General Assembly to enact a law that provides for the taxation of real estate according to the actual interest of the owner therein, or that, at least, partially effectuates that object, under that provision of the Constitution that requires that the regulation shall be just.

Many cases uphold the right of a state to enact a law that apportions the value of land for taxation upon the basis of the actual interests of the mortgagor and mortgagee, respectively, therein. *Savings, etc., Society v. Multnomah County,* 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803, and cases there cited. This amounts, in effect, to taxing a mortgage at the *situs* of the land, and such a statute has been held valid even as against non-resident mortgagees. *Savings, etc., Society v. Multnomah County, supra.* The enactment in question, although it does not operate to transfer the *situs* of the debt, amounts to an apportionment of the land value for taxation, as between the mortgagor and the mortgagee, except when the mortgage is held by a non-resident, or is payable to some public and non-taxable fund. May

State, *ex rel.*, *v.* Smith.

the General Assembly enact such legislation in its endeavor to be just? We do not mean to intimate that no law can be upheld that in its operation may result in duplicate taxation. As stated by Judge Cooley, in his work on Taxation (page 223): "We make out, therefore, no conclusive case against a tax, when we show that it reaches twice the same property for the same purpose. This may have been intended, and in many cases, at least, is admissible." But if A sells a tract of land to B for $1,000, and takes a mortgage back for the entire purchase money, and if the mortgagee be a resident of this State, there is brought into existence, in the absence of the enactment in question, additional taxable property to the amount of $1,000, although it is apparent that by such a transaction the State's wealth has not been increased a farthing. To what extent the State's assessment sheet is augmented by duplicate taxation, courts that act on evidence cannot ascertain. A public tribunal could not enter on such an inquiry, unless, like a legislature, it was authorized to act on common repute and opinion.

We are disposed to place stress upon the fact that the lien which may be made the basis of a deduction is a mortgage lien, as distinguished from other liens upon real estate, general and special. While it is true that for most purposes a mortgage will be treated as a mere security for a debt, yet, whenever it is necessary to render effective the rights of the parties, the courts still treat mortgages as forms of defeasible sales. *Vinnedge* v. *Shaffer,* 35 Ind. 341; *United States, etc., Co.* v. *Harris,* 142 Ind. 226; *Citizens State Bank* v. *Harris,* 149 Ind. 208; *Savings, etc., Society* v. *Multnomah County, supra.* As observed by the Supreme Court of the United States in the case last cited: "If the law treats the mortgagee's interest in the land as real estate for his protection, it is not easy to see why the law should forbid it to be treated as real estate for the purpose of taxation."

In our opinion, the General Assembly may enact a statute like the one in question without violating the provision

that it shall prescribe such regulations as shall secure a just valuation for taxation of all property except such property as the Constitution authorizes to be exempted. Gross valuations are not required. As said by this court in *Florer* v. *Sheridan,* 137 Ind. 28, 41, 23 L. R. A. 278: "Section 1, article 10, *supra,* does not say the *gross* [our italics] amount of all notes, accounts, and other choses in action shall be taxed, and we can not so construe it without perverting its language and obvious meaning." In our opinion, the case last cited is entirely in point, for as it is well settled that, under a constitutional provision requiring *all* property to be taxed, it is not competent to exempt solvent credits; yet this court there held that the legislative authority was sufficient to warrant the deduction of *bona fide* indebtedness from the total amount of the notes, accounts, and other choses in action embraced within the taxpayer's schedule. We, therefore, perceive no difference in principle between this case and the Florer case. As the court there said: "Deductions and exemptions are two separate and distinct things, having no connection. A deduction is the taking of the subtrahend from the minuend. It is a subtraction. Exemption is an immunity or privilege—it is freedom from a charge of burden to which others are subject." Upon the subject of an allowance for debts, Judge Cooley says: "Revenue laws sometimes permit taxpayers to deduct from the property to be taxed the debts owing by them. Sometimes the deduction is from credits only; sometimes from mortgages; sometimes from the aggregate of personal estate.   *   *   *   The allowance is not in any proper sense an exemption, but is made by way of reaching the just amount of taxable property." Cooley on Taxation, 174. This general doctrine is also recognized by Mr. Desty. 1 Desty on Taxation, 551.

The enactment in question, while it does not go as far as it might possibly do in the direction of subjecting mortgages to taxation, does not, it is to be observed, relieve any mortgage credit from taxation that was taxable before; and

the mere fact that there may have been an omission to extend the power of taxing mortgages will not invalidate the provision for a deduction from mortgaged lands, any more than the adjudged omission to provide for the taxation of paid up life insurance policies will avoid the entire legislative scheme of taxation.

We have now reached the question whether the act violates §22 of art. 4 of the State Constitution. That section provides that: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say:    *    *    *    For the assessment and collection of taxes for State, county, township or road purposes." It cannot be claimed that the act is local, but the question whether it is special challenges our consideration. This court, in *Indianapolis St. R. Co.* v. *Robinson,* 157 Ind. 232, quoted the following statements, found in the case of *State* v. *Parsons,* 40 N. J. L., 1: "Interdicted, local and special laws are all those that rest on a false or deficient classification; their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." Granting, but not deciding, that §1 of art. 10 of our Constitution and §22 of art. 4 of that instrument overlap in the effort to put checks upon the otherwise supreme and peremptory power of taxation, we feel that this opinion has already vindicated the act from the claim that it is discriminative as between taxpayers.

The first words in the body of the act are: "*Any* person desiring to avail himself, or herself, of the provisions of this act, shall", etc. The words import universality. They are broad enough to include all persons. In *Gilson* v. *Board, etc.,* 128 Ind. 65, we find the following: "It is held that a statute which is of general and uniform operation through-

out the State, and operates alike upon all persons, under the same circumstances, is not subject to the objection that it is special or local legislation. *State, ex rel., v. Reitz,* 62 Ind. 159; *McLaughlin* v. *Citizens, etc., Assn.,* 62 Ind. 264; *Heanley* v. *State,* 74 Ind. 99; *Elder* v. *State,* 96 Ind. 162." Again, it was said by Frazer, J., in *Hingle* v. *State,* 24 Ind. 28, 31: "What is a special act? It is such as at common law the courts would not notice, unless it were pleaded and proved like any other fact." Mr. Sutherland, in his work on Statutory Construction, collects a large number of cases relative to prohibited special legislation, and his text enunciates opinions in accord with those expressed in *State* v. *Parsons, supra.* This act does not, however, amount to a special law, if we accept the view of that learned author as to what constitutes special legislation, for he says (§129): "The prohibition is in the way of legislation for individual cases. It is equally fatal to such legislation though it be general in form. If a statute is plainly intended for a particular case, and looks to no broader application in the future, it is special or local, and, if such laws are prohibited on the subject to which it relates, is unconstitutional. The lineaments by which such cases are to be distinguished are usually so special that a law confined thereto would be anticipated to have no effect from the antecedent improbability of such a case arising. When, therefore, it is found to fit such a special case, it is deemed to have been enacted solely for it." Even if we were inclined to commit this court to the doctrine of *State* v. *Parsons, supra,* we should nevertheless be compelled to hold that the act we have been considering does not thereby stand condemned.

It has been suggested that this act is invalid by reason of the provision of the fourteenth amendment to the federal Constitution relative to the right to the equal protection of the laws; but as a discussion of this subject upon our part would require a reiteration, to some extent, of what has been said heretofore, we are not inclined to give further ex-

State, *ex rel.*, *v.* Smith.

pression of our views upon this subject. As particularly applicable, however, to this question, as well as to some of the other questions that we have discussed heretofore, we quote the following statements from the Supreme Court of the United States in the case of *Magoun* v. *Saving Bank,* 170 U. S. 283, 292, 18 Sup. Ct. 594, 42 L. Ed. 1037: "Is the act open to this criticism? The clause of the fourteenth amendment especially invoked is that which prohibits a state denying to any citizen the equal protection of the laws. What satisfies this equality has not been and probably never can be precisely defined. Generally it has been said that it 'only requires the same means and methods to be applied impartially to all the constituents of a class, so that the law shall operate equally and uniformly upon all persons in similar circumstances'. *Kentucky Railroad Tax Cases,* 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414. It does not prohibit legislation which is limited, either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed. *Hayes* v. *Missouri,* 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578. Similar citations could be multiplied. But what is the test of likeness and unlikeness, of circumstances and conditions? These expressions have almost the generality of the principle they are used to expound, and yet they are definite steps to precision and usefulness of definition, when connected with the facts of the cases in which they are employed. With these for illustration it may be safely said that the rule prescribes no rigid equality and permits to the discretion and wisdom of the state a wide latitude as far as interference by this court is concerned. Nor with the impolicy of a law has it concern. Mr. Justice Field said in *Mobile County* v. *Kimball,* 102 U. S. 691, 26 L. Ed. 238, that this court is not a harbor in which can be found a refuge from ill-advised, unequal, and

oppressive state legislation.    And he observed in another case: 'It is hardly necessary to say that hardship, impolicy or injustice of state laws is not necessarily an objection to their constitutional validity'.    \*    \*    \*    Of taxation, and the case at bar is of taxation, Mr. Justice Bradley said, in *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892, and Mr. Chief Justice Fuller in *Giozza* v. *Tiernan,* 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599, 'that the fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation.'    The range of the state's power was expressed by Mr. Justice Bradley, as follows: 'It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions.    It may impose different specific taxes upon different trades and professions, and vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; *it may allow deductions for indebtedness, or not allow them.* [Our italics.]    All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state framing their constitution'.    And so Mr. Justice Miller, speaking for the court in *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616, said: 'The federal Constitution imposes no restraints on the state in regard to unequal taxation'.    The court, through Mr. Justice Lamar, in *Pacific Express Co.* v. *Seibert,* 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035, was equally emphatic.    He said on page 351: 'This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or from being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of

those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principles of uniformity and equality in taxation and of a just adaptation of property to its burdens'. And it was said in *Merchants Bank* v. *Pennsylvania,* 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236: 'Indeed, this whole argument of a right under the federal Constitution to challenge a tax law on the ground of inequality in the burdens resulting from the operation of the law is put at rest by the decision on *Bell's Gap R. Co.* v. *Pennsylvania, supra.'* " See, also, as bearing on the question as to the application of the fourteenth amendment, *Cass Farm Co.* v. *City of Detroit,* 181 U. S. 396; 21 Sup. Ct. 644, 45 L. Ed. 914; *City of Detroit* v. *Parker,* 181 U. S. 399, 21 Sup. Ct. 624, 45 L. Ed. 917; *Cleveland, etc., R. Co.* v. *Backus,* 133 Ind. 513; *Pittsburgh, etc., R. Co.* v. *Backus,* 133 Ind. 625.

It may be a matter of grave doubt whether public policy is conserved by an enactment that substitutes net values for gross values, upon a species of property upon which the State must largely depend for its maintenance, but we cannot run a race of opinion with the legislature upon this subject.

Counsel for appellee dwell at some length upon some of the crudities of the act in question. We do not deem it necessary to consider such matters. What we affirm is that the act is valid. It follows, therefore, that the court below erred in sustaining appellee's demurrer to the application and alternative writ.

Judgment reversed, with instructions to the court below to overrule the demurrer to the application and alternative writ, and for further proceedings not inconsistent with this opinion.

Dowling and Monks, JJ., dissent.

State, *ex rel.*, *v.* Smith.

## DISSENTING OPINION.

DOWLING, J.—After careful and impartial reflection I am constrained to withhold my assent from the reasoning and conclusions of the opinion adopted by the majority of the court. The importance of the questions presented upon this appeal renders it proper to state with some particularity the grounds of such dissent.

In determining the case, the court is required to interpret certain provisions of the State Constitution. Those provisions relate to the highest function of government —the power of taxation. Vital to the commonwealth, its abuse or misdirection is disastrous to the citizen. The subject occupies a conspicuous place in the organic law of the State, and the language employed concerning it is clear, forcible, and, as it seems to me, unmistakable in its meaning.

The question for decision is the constitutional validity of an act of the legislature entitled "An act concerning the taxation of real estate encumbered by mortgage, and declaring an emergency," which took effect, if valid, March 4, 1899. Acts 1899, p. 422, §§8417a, 8417b, 8417c, 8417d Burns 1901.

That portion of the act necessary to be considered is contained in the first three sections, and reads as follows: "Section 1. That any person being the owner of real estate liable for taxation within the State of Indiana, and being indebted in any sum, secured by mortgage upon real estate, may have the amount of such mortgage indebtedness, not exceeding $700, existing and unpaid upon the first day of April of any year, deducted from the assessed valuation of mortgage premises for that year, and the amount of such valuation remaining after such deduction shall have been made shall form the basis for assessment and taxation for said real estate for said year. *Provided,* That no deduction shall be allowed greater than one-half of such assessed valu-

ation of said real estate. Section 2. Any person desiring to avail himself or herself, of the provisions of this act shall, between the first day of March and the first day of May of each year, file with the auditor of the county wherein said real estate is situate a sworn statement of the amount of such mortgage indebtedness existing and unpaid on the first day of March of that year, giving the name and residence of the mortgagee, and shall also give the name and residence of the assignee or *bona fide* owner or holder of said mortgage, if known, and if not known, said person shall state that fact, and shall also state the record and page where said mortgage is recorded, and a brief description of the real estate upon which such encumbrance exists. Section 3. The county auditor with whom such statement is filed, in case the money, notes or credits evidenced by such mortgage indebtedness be liable for taxation in any county in the State of Indiana, other than the one wherein such real estate is situate, shall immediately certify and transmit a copy of such sworn statement to the auditor of the county wherein the mortgagee, assignee or *bona fide* holder or owner of said mortgage resides, or wherein the money, notes or credits evidenced by such mortgage is otherwise taxable."

These sections, as I believe, are plainly and directly in conflict with three separate provisions of the State Constitution, namely: (1) Section 23, article 1, of the bill of rights. "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." (2) Section 22, article 4. "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say:    *    *    *    For the assessment and collection of taxes for State, county, township or road purposes." (3) Section 1, article 10. "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxa-

tion of all property, real and personal, excepting such only, for municipal, educational, literary, scientific, religious, or charitable purposes as may be especially exempted by law."

The act in question is subject to the following objections: (1) It violates the rule of the Constitution requiring uniformity and equality in the rate of assessment and taxation; (2) the act is a special law for the assessment of taxes for State, county, township, and road purposes; (3) it grants to one class of citizens privileges and immunities which upon the same terms will not equally belong to all citizens; and (4) it excepts from taxation real estate not held for municipal, educational, literary, scientific, religious, or charitable purposes. If it shall be found upon examination that any one or more of these propositions is true, then the statute must be held invalid.

All of the constitutional provisions referred to have been in force since November 1, 1851. Carefully prepared and comprehensive statutes regulating the assessment and collection of taxes have been adopted by the General Assembly from time to time; but from the taking effect of the State Constitution until March 4, 1899, a period of nearly half a century, no statute exempted from assessment for taxation any real estate on the ground that it was encumbered by the lien of a mortgage. This circumstance is not conclusive, but as evidence of a practical interpretation of the Constitution by the legislature, the failure for so great a length of time to recognize mortgage liens on lands as proper deductions from the value of the lands for the purposes of taxation is entitled to some consideration. It is to be observed, too, that this practical interpretation of the Constitution as prohibiting such deductions is perfectly consistent with the language of that instrument, and is reasonable and natural. *Stuart* v. *Laird,* 1 Cranch 299, 2 L. Ed. 115; *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, 351, 4 L. Ed. 97; *Cohens* v. *Virginia,* 6 Wheat. 264, 418, 5 L.

Ed. 257; *Bank of United States* v. *Halstead,* 10 Wheat. 51, 63, 6 L. Ed. 264; *Ogden* v. *Saunders,* 12 Wheat. 213, 290, 6 L. Ed. 606; *Minor* v. *Happersett,* 21 Wall. 162, 22 L. Ed. 627; *Bay City* v. *State Treasurer,* 23 Mich. 499; *McCullough* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579; *Cooley* v. *Wardens,* 12 How. 299, 13 L. Ed. 996; *Pierce* v. *Fitzhugh,* 12 How. 443, 13 L. Ed. 1058; *Rodgers* v. *Goodwin,* 2 Mass. 475; *Bingham* v. *Miller,* 17 Ohio 445, 49 Am. Dec. 471; *Board, etc.,* v. *Bunting,* 111 Ind. 143.

Again, an examination of the act of March 4, 1899, discloses that it did not receive the approval of the Governor, but became a law without his signature. While the failure of the executive to approve a bill does not affect its validity if it becomes a law without his approval, the fact remains that one of the great departments of the State government has withheld its recognition of the statute. The non-approval of the act by the Governor is at least suggestive of doubt in the mind of the executive of the validity of the law.

It is also to be noted that the act under consideration is not a part of the general statute embracing a complete system for the assessment and collection of taxes, but is sporadic in its character, and stands separate and apart from all other legislation upon the subject of taxation. Such being its nature, the inference is not strained that it probably did not receive the attention which would have been accorded to it if it had constituted a portion of a general statute regulating the assessment and collection of taxes. But, passing from these minor objections to those arising from the Constitution, it will be found that, if the statute is to stand, the Constitution must give way. In other words, to sustain the act the court must, in the language of Judge Story, "abrogate the text, fritter away its obvious sense, and narrow down its true limitations."

The first clause of §1, article 10, of the Constitution declares that "the General Assembly shall provide by law for

a uniform and equal rate of assessment and taxation." By this clause the principle which must govern all legislation on the subject of the assessment and collection of taxes is announced. At the very basis of every valid statute of this kind lies the condition that the rate of assessment and taxation must be uniform and equal throughout the district or locality in which the tax is levied. An assessment is defined to be a valuation made by authorized persons according to their discretion, as opposed to a sum certain or determined by law. It is a valuation of the property of those who are to pay the tax, for the purpose of fixing the proportion which each man shall pay. Under our Constitution the rule or ratio of valuation of real estate of those who are to pay the tax must be uniform and equal throughout the State, and the ratio of taxation must be uniform and equal throughout the district or locality affected. This is the first and paramount requirement.

The *second* clause of §1, article 10, is evidently subsidiary to the *first*. It relates to the means by which a uniform and equal assessment is to be obtained. The General Assembly is to "provide such regulations as shall secure a just valuation for taxation of all property, real and personal." The obvious meaning of this provision is that competent persons shall be appointed or elected as assessors to determine the valuation to be put upon property for the purpose of taxation, and that the general mode of procedure shall be fixed by law; but none of the regulations so prescribed can change the rule of uniformity and equality of valuation immovably established by the *first* clause of the section. The danger and abuse against which the Constitution was intended to guard was an arbitrary valuation of property by the State. Instead of an arbitrary and perhaps unreasonable assessment by the law itself, a *just* valuation was to be secured. In this connection the term *just* is the equivalent of correct, honest, true. Its use requires the valuation of all property of the same kind in the same taxing district

by a uniform and equal standard. By no rule of constitutional interpretation can the term "just," as used in the *second* clause of §1, be said to qualify or limit or restrict the meaning of the words "uniform and equal", used in the *first*.

Under the act before the court, a lot or tract of land may be assessed for taxation at the rate of $1,400, while another lot or tract in the same taxing district and of the same value may be assessed for taxation at the rate of $700. The pretext for this violation of the rule of uniformity and equality of assessment is that the second lot is subject to the lien of a mortgage to the amount of $700 or more, while the first is unencumbered. The fallacy of this method becomes apparent when it is remembered that general taxes are assessed against property, and not against its owners. The tax follows the thing against which it is assessed, and does not, in the ordinary sense, constitute a debt against the owner. Its claim for revenue being paramount, the State has nothing to do with questions of title, liens, or equities. Before the law, all property stands alike subject to taxation without regard to the title by which it is held, or the equities with which it is charged. A valid sale for delinquent taxes fuses all rights of ownership, extinguishes all equities, and transfers to the purchaser an unencumbered title in fee simple.

The entire legal title being in the owner of the lot or tract, and the value of the land for taxation being unaffected by the amount of liens upon it, the attempted regulation by which the valuation of the land is made to depend upon the accident of the existence of a mortgage lien destroys the uniformity and equality of assessment required by the Constitution, and therefore cannot be upheld. The general doctrine upon this subject is clearly stated by Judge Cooley: "It is of the very essence of taxation that it be levied with equality and uniformity, and to this end that there should be some system of apportionment. Where the burden is common, there should be common contribution to

discharge it." Cooley's Const. Lim. (6th ed.), 608; 2 Kent. Com., 231; *Bright* v. *McCullough*, 27 Ind. 223.

It is said in *Cleveland, etc., R. Co.* v. *Backus*, 133 Ind. 513, 535, 18 L. R. A. 729: "The first clause of this section [§1, Art. 10, *supra*] is certainly complied with when the same basis of assessment is fixed for all property, and the same rate of taxation is fixed within the district subject to taxation; that is to say, there is uniformity, and equality of assessment and taxation when all the property is to be assessed at its true cash value, and the same rate is fixed on all property subject to assessment for the tax."

And in *Willis* v. *Crowder*, 134 Ind. 515, the court say: "The taxable value of property is its fair cash value, a fair cash value being the market or usual selling price, and if there be no market value, then it is the actual value that rules."

The act of March 4, 1899, does not permit an assessment of the mortgaged real estate at its fair cash value, or at any value fixed by the judgment or discretion of the assessors; but it requires that arbitrary deductions shall be made of amounts fixed by the legislature, and which have no basis in or connection with the nature of the property assessed, or even with the encumbrances to which it is subject. Under this act, none of the property to which it relates can be assessed at its cash value, as other real estate is assessed.

The act does not attempt to divide the assessment for taxation between the mortgagor and the mortgagee, but stops short with the deduction allowed to the mortgagor or owner of the fee. It entirely relieves the mortgage interest from taxation if the mortgagee is a non-resident, or if the mortgage is a school-fund mortgage.

But it is claimed that absolute uniformity and equality of assessment cannot be attained, and therefore the law must be satisfied with something less. The answer to this proposition is that the obstacles to uniformity and equality contemplated by the courts which have used this language are

State, *ex rel.*, *v.* Smith.

those which inhere in the nature of things, such as the falli-
bility of men's judgment as to values, the mistakes and
omissions of public officers, and the frauds of owners. They
are never such inequalities and differences as are created by
the law itself. While the efforts of the law to produce abso-
lute uniformity and equality may be ineffectual, the Consti-
tution demands that the taxing statutes shall aim at these
objects, and that such statutes themselves shall be free from
provisions which destroy them.

2. The act of March 4, 1899, is a special law for the
assessment and collection of taxes for State, county, town-
ship, and road purposes, and therefore falls within the pro-
hibition of §22, article 4, of the Constitution. The very
title of the act indicates its special character. It is not gen-
eral either as to the property excepted from assessment and
taxation, or the persons who are the objects of its discrim-
inating bounty. It is entitled "An act concerning the taxa-
tion of real estate encumbered by mortgage". It does not
apply to real estate encumbered by liens generally, but,
without reason therefor, is confined exclusively to such real
estate as is encumbered by a particular kind of lien. In
this respect it favors certain individuals and property, and
discriminates against all others of the same class who are
similarly situated. It cannot be defended on the ground
that there are two separate estates in lands encumbered by
mortgage, and that this fact constitutes a basis of classifica-
tion. The law declares that for the purposes of taxation
the mortgagor shall be deemed the owner of real property
until foreclosure and possession taken by the mortgagee.
"In cases of mortgaged real estate, the mortgagor shall, for
the purpose of taxation, be deemed the owner until the mort-
gagee shall have taken possession of the mortgaged prem-
ises, after which the mortgagee shall be deemed the owner."
Acts 1891, §28, p. 205, §8438 Burns 1901.

It has been held repeatedly by this court that a mortgage
conveys no estate in the lands mortgaged, but simply creates

a lien. §1099 Burns 1901; *Reasoner* v. *Edmundson,* 5 Ind.
393; *Francis* v. *Porter,* 7 Ind. 213; *Morton* v. *Noble,* 22
Ind. 160; *Grable* v. *McCulloh,* 27 Ind. 472; *Fletcher* v.
*Holmes,* 32 Ind. 497. This being so, what difference is
there between the lien of a mortgage on lands and other
liens? And why should real estate subject to one particular
kind of lien be separated from other property also subject
to liens of equal dignity, and relieved from equal burdens
of taxation? The class to which the owners of the favored
real estate belong is that of debtors and owners of real estate
subject to liens. The class to which the property belongs
is that of real estate encumbered by liens. Why should
these classes be subdivided, and one subdivision favored,
and the remaining members of those classes discriminated
against? To illustrate the practical operation of the stat-
ute, let it be supposed that A, B, C, D, and E, each, is the
owner of a lot of the value of $1,400 on the same street, in
the same block, in the same town. A's lot is subject to a
mortgage lien of $700; B's to a vendor's lien of $700; C's
to a mechanic's lien of $700; D's to a street improvement
lien of $700; and E's to the lien of a judgment for $700.
Can any reason, valid in law, be given why A should have
the right to a deduction of $700 from the value of his lot,
as the basis of assessment and taxation, but that B, C, D,
and E shall be denied that privilege? Why "the amount of
such valuation, remaining after such deduction shall have
been made, shall form the basis for assessment and taxation
for said real estate" in A's case, but that the full amount
of the valuation of the lots owned by B, C, D, and E, with-
out any deduction for the liens upon them, should form the
basis of such assessment against them, it is impossible to
discover.

But even as among the favored owners of real estate en-
cumbered by mortgage liens, the classification is unequal
and unjust. If A owns a lot valued for taxation at $1,400,
encumbered by a mortgage lien of $700, he is allowed a

deduction of $700. But if B owns a lot valued at $500, encumbered by a mortgage lien of $700, he is allowed a deduction of $250 only. Upon what natural or reasonable basis do these discriminations rest? Is not the statute "discriminative between individuals of the" so-called "class, and does it not select some for an exceptional burden?" Suppose, however, the reasons urged in support of the statute in question are valid. That as it applies to all persons belonging to a class into which all property owners of the State may at some time enter, and as it is not in terms limited to individuals of a class, it is therefore not in conflict with the Constitution. All enactments having these qualifications, it is said, are to be regarded as within the limitations of the Constitution. The owners of all real estate encumbered by mortgage constitute a natural class, and legislation applying to all of them is general, and not special. It follows that the owners of all real estate encumbered by vendors' liens constitute another class just as distinct and quite as natural; the owners of real estate encumbered by mechanics' liens, another; the owners of real estate encumbered by street improvement liens, another; and the owners of real estate encumbered by judgment liens, still another. Therefore, no objection could be taken to a further act of the legislature declaring that the owners of real estate liable for taxation in the State of Indiana, being indebted in any sum secured by a vendor's lien upon real estate, may have the amount of such indebtedness, not exceeding $1,000, deducted from the assessed valuation of the encumbered premises for the year, and that the amount of such valuation remaining after such deduction shall have been made shall form the basis for assessment and taxation for said real estate for that year. Then, other separate acts fixing deductions of $1,500 for indebtedness secured by mechanics' liens, $250 for indebtedness secured by street improvement liens, and $100 for indebtedness secured by judgment liens, must also be unobjectionable. Could such legislation be

defended? If not, by what argument can a classification which selects as the objects of its favoritism one set of debtors, and excludes all others, notwithstanding their situation is in every legal aspect undistinguishable from that of the favored individuals, be saved from condemnation under the Constitution?

The very just and sensible remarks of Dixon, C. J., in *Knowlton* v. *Supervisors,* 9 Wis. 410, 421, are entirely pertinent here: "It was contended in argument," say the court, "that as those provisions fixed one uniform rate without the recorded plats, and another within them, thus taxing all the property without alike, and all within alike, they do not infringe the constitution. In other words, that, for the purpose of taxation, the legislature have the right arbitrarily to divide up and classify the property of the citizens, and, having done so, they do not violate the constitutional rule of uniformity, provided all the property within a given class is rated alike. The answer to this argument is, that it creates different *rules* of taxation to the number of which there is no limit, except that fixed by legislative discretion, while the constitution establishes but one fixed, unbending, uniform rule upon the subject. It is believed that if the legislature can by classification thus arbitrarily and without regard to value, discriminate in the same municipal corporation between personal and real property within, and personal and real property without, a recorded plat, they can also, by the same means, discriminate between lands used for one purpose and those used for another; such as lands used for growing wheat and those used for growing corn, or any other crop; meadow lands and pasture lands; cultivated and uncultivated lands; or they can classify by the description, such as odd numbered lots and blocks, and even numbered ones, or odd and even numbered sections. Personal property can be classified by its character, use or description, or, as in the present case, by its location, and thus the rules of taxation may be multiplied to an extent

State, *ex rel.*, *v.* Smith.

equal in number to the different kinds, uses, descriptions, and locations of real and personal property. We do not see why the system may not be carried further and the classification be made by the character, trade, profession, or business of the owners. For certainly this rule of uniformity can as well be applied to such a classification as any other, and thus the constitutional provision be saved intact. Such a construction would make the constitution operative only to the extent of prohibiting the legislature from discriminating in favor of particular individuals, and would reduce the people, while considering so grave and important a proposition, to the ridiculous attitude of saying to the legislature 'You shall not discriminate between single individuals or corporations, but you may divide the citizens up into different classes as the followers of different trades, professions, or kinds of business, or as the owners of different species or descriptions of property, and legislate for one class, and against another, as much as you please, provided you serve all of the favored or unfavored classes alike'; thus affording a direct and solemn constitutional sanction to a system of taxation so manifestly and grossly unjust, that it will not find an apologist anywhere, at least outside of those who are the recipients of its favors. We do not believe the framers of that instrument intended such a construction, and therefore cannot adopt it."

I have been unable to find a single decision, state or federal, in which an arbitrary classification such as that created by the act of March 4, 1899, has been sustained. Neither is any decision of this character referred to in the prevailing opinion. On the other hand, the reported cases condemning such rules of assessment and taxation are numerous and emphatic. "This is a domain from which special and local legislation is utterly excluded whenever the legislative end can be effected by a general law." *Van Riper* v. *Parsons,* 40 N. J. L. 1. "Interdicted local and special laws are all those that rest on a false or deficient classification;

\* \* \* ." *Van Riper* v. *Parsons, supra.* "There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation, and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restrictions of the legislation." *State* v. *Hammer,* 42 N. J. L. 435, 440. "Such law must embrace all and exclude none whose condition and wants render such legislation equally necessary or appropriate to them as a class." *State, ex rel.,* v. *Wood,* 49 N. J. L. 85, 7 Atl. 286. "The classification must be so general as to bring within its limits all those who are in substantially the same situation or circumstances." *Lippman* v. *People,* 175 Ill. 101, 107, 51 N. E. 872. "A law is not always general because it operates upon all within a class. There must be back of that a substantial reason why it is made to operate only upon a class, and not generally upon all." *Ex parte Jentzsch,* 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664, 665. "The conclusion is, that although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law." *City of Pasadena* v. *Stimson,* 91 Cal. 238, 27 Pac. 604. "This classification, however, must be founded upon differences which are either defined by the constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in legislation." *Darcy* v. *Mayor, etc.,* 104 Cal. 642, 38 Pac. 500. "While the classification was in itself arbitrary, as in this case, the law did not include all who

came within the arbitrary ·classification thus made." *Ex parte Jentzsch,* 1:12 Cal. 468, 32 L. R. A. 664, 665. "Every one has a right to demand that he be governed by general rules; and a special statute that singles his case out as one to be regulated by a different law, from that which is applied in all similar cases, .would not be legitimate legislation, but an arbitrary mandate, unrecognized by the law. * * * The state, it is to be presumed, has no favors to bestow, and designs to inflict no arbitrary deprivation of rights. Special privileges are always obnoxious, and discriminations against persons or classes are still more so, and, as a rule of construction, are always to be leaned against as probably not contemplated or designed." Cooley's Const. Lim., 393, 395. See, also, *Bank* v. *Cooper,* 2 Yerg. (Tenn.) 599, 24 Am. Dec. 517; *Officer* v. *Young,* 5 Yerg. (Tenn.) 320, 26 Am. Dec. 268; *Griffin* v. *Cunningham,* 20 Gratt. 31; *Arnold* v. *Kelley,* 5 W. Va. 446; *Lewis* v. *Webb,* 3 Greenl. 326; *State; ex rel.,* v. *Ellet,* 47 Ohio St. 90, 23 N. E. 931, 21 Am. St. 772, and notes; *State* v. *Hinman,* 65 N. H. 103, 18 Atl. 194, 23 Am St. 22, and notes; *State* v. *Sheriff,* 48 Minn. 236, 51 N. W. 112, 31 Am. St. 650; *Hogg* v. *Mackay,* 23 Ore. 339, 31 Pac. 779, 19 L. R. A. 77, 37 Am. St. 682; *State* v. *Gardner,* 58 Ohio St. 599, 51 N. E. 136, 41 L. R. A. 689, 65 Am. St. 785; *Washington University* v. *Rouse,* 8 Wall. 439, 444, 19 L. Ed. 498.

The partial legislation of the act of March 4, 1899, is not sanctioned by anything said by this court in *Florer* v. *Sheridan,* 137 Ind. 28, 23 L. R. A. 278. The statute which was held constitutional in that case permitted every debtor in the State to deduct the amount of his debts from the sum of his credits, the excess of the latter only being subject to assessment and taxation. Whatever may be said of that statute in other respects, the classification of the persons who might avail themselves of it was general, and in striking contrast with that of the act before us.

3.   The privilege of the deductions authorized by the act of March 4, 1899, is confined to a particular class of debtors, and does not, upon the same terms, equally belong to all the citizens of the State.   The privilege granted is that of a special mode of assessment, which admits of a reduction of the valuation of real estate for the purposes of taxation. The terms upon which this privilege may be claimed are such that only a very limited class of debtors comes within them.   The great body of the citizens of the State are by those terms excluded from the benefit of the privilege secured to the few.   All who are not indebted at all, and who own land, must be assessed upon the full valuation of that land.   All landowners who are indebted, but whose debts are not secured by mortgage on their lands, are excluded. All who are indebted, and whose lands are encumbered by liens, other than mortgage liens, are shut out.   All citizens who own no real estate, but who hold mortgaged goods and chattels, are denied the privilege.   The law which grants the privilege to the few denies it to all others as certainly as if it declared in so many words that they should not enjoy it.   And just in proportion as the terms on which such privileges are granted are made special and individual, the number of citizens who come within them is reduced. · The vice of this statute, as has been pointed out elsewhere in this opinion, is in the classification.   It attempts to create a class within a class.   The terms upon which the privilege is granted are too narrow.   It is not sufficient that any citizen of the State may possibly at some time fall within the description of the favored class.   If this were so, classifications might be made which would not include a score of citizens in the State.

4.   The practical effect of the act is to *exempt* from taxation property not used for municipal, educational, literary, scientific, religious, or charitable purposes, and for this reason it conflicts with §1, article 10, of the Constitution, and is void.   The constitutional rule requires that *all* property,

real and personal, shall be valued for taxation, excepting such only, for the purposes above named, as may be especially exempted by law. It seems clear that, if $700 may be deducted from the assessed valuation of each lot or tract of land in the State which is encumbered by mortgage, that proportion of the value of each lot or tract is exempted from its due share of the common burden. Calling it a *deduction* does not make it any the less an exemption. If two lots are valued at $1,400 each, one being encumbered with a mortgage for $700, and the other not; and the owner of the first is required to pay taxes on a valuation of $700 only, and the owner of the second on $1,400, then the first lot, by reason of the encumbrance, is exempted from taxation to the extent of $700. Call it what we may, the owner of the first lot enjoys an immunity which is denied to his less fortunate neighbors. He is exempted from a burden to which all others are subject. "The Constitution absolutely prohibits the exemption of any property, except for municipal, educational, literary, scientific, religious, or charitable purposes, and as no part of plaintiff's property is included within any of these enumerated classes, any law which attempts to exempt it from taxation is void. And, 'any law which indirectly produces such exemption must be equally void; that cannot be accomplished indirectly which the organic law declares shall not be done directly'." Mr. Justice Field, in *Huntington* v. *Worthen,* 120 U. S. 97, 7 Sup. Ct. 469, 30 L. Ed. 588.

In addition to all that has been said, it may be added, that the act in question equally conflicts with the fourteenth amendment of the Constitution of the United States, in that it denies to a large part of the citizens of this State the protection it extends to a selected class.

It is said in the brief of counsel for the appellant that: "The deductions on account of mortgage indebtedness for the year 1900 aggregated over $35,000,000. The amount claimed for the year 1901 will approximate $40,000,000."

For every dollar of valuation of real estate so withdrawn from assessment the burden of taxation on what is left is increased by just so much.   Every reduction of the aggregate assessment requires a proportionate increase in the rate of taxation.   A law which works such stupendous and disastrous results to the great body of the taxpayers of the State should rest on solid and substantial foundations if it is to be sustained.   Believing as I firmly do that the act of March 4, 1899, is vicious and indefensible in principle, and that its application is destructive of uniformity and equality in taxation, I think that it should be declared unconstitutional, and that the judgment of the Marion Circuit Court should be affirmed.

Monks, J., concurs in dissenting opinion.

## PETITION FOR REHEARING.

GILLETT, J.—Appellee's counsel have filed a petition for a rehearing in this cause, and we have given careful consideration to the views that find expression in their brief in support of such petition.   After doing so, and upon a reëxamination of, and further search for authorities, we adhere to the conclusion before announced that the law is valid.  The original opinion stated at length the views of a majority of the court, but the importance of the case is a sufficient reason for a further opinion.

It must not be forgotten that §1 of article 10 of the State Constitution is not the source of the legislative power of taxation, for that section is only a curb upon the authority of the General Assembly.   Can it be said that a law that authorizes a deduction of mortgage debts from the value of the tracts of real estate to which they respectively attach provides for an unequal assessment, or that it is a regulation that prevents a just valuation of all property not authorized to be exempted by the Constitution?   It is true that the General Assembly has not power to fix a valuation upon

real estate, but this act is based upon a recognition of the fact that we have already shown upon the authorities, both federal and state, that he who makes a mortgage upon his real estate does an act that amounts to a conditional alienation of his title, and it is, of course, unquestionable that he thereby parts with a substantial part of his land value. Counsel for appellee may assert that a mortgage is a mere lien, and for most purposes we so recognize it; but if it be the law—and it does not admit of question that it is—that the mortgage will be treated as a conveyance of title whenever necessary to protect the rights of the parties, the question arises whether the General Assembly cannot seize upon this fact to avoid double taxation? As pointed out in our former opinion, the Supreme Court of the United States has declared that a mortgage may be treated as a conveyance of the land *pro tanto,* so that, with statutory authority, a non-resident mortgagee may be compelled to pay a ratable part of the assessment upon the land at the *situs* thereof. If it be asked, how do we justify the omission to place lands encumbered by vendor's liens, mechanic's liens, or judgment liens upon the same footing as lands subject to mortgage? we answer that such former demands are mere liens; while, in the case of a mortgage, the mortgagor has by deed, in no insubstantial sense, parted with a part of his interest in the land. Is this not reason enough to justify the General Assembly in recognizing this as ground for distinction, when to do so would be, in its judgment, to accomplish justice? This court in the Florer case held that debts could be deducted from credits, because the constitutional mandates as to equality in the assessment and as to a just valuation of all property not authorized to be exempted by the Constitution had no reference to mere fictitious values; and this case stands upon the same general footing, but it finds stronger support in reason, in that there is a separation of values by defeasible deed. Within a year after the taking effect of the present State Constitution the General Assem-

bly passed an act concerning taxation which contained, in §23 thereof, the following words: "Provided, that each taxpayer may and is hereby authorized to deduct the amount of his indebtedness out of his solvent claims." Acts s. s. 1852, p. 44. The force of a construction of the Constitution by a session of the General Assembly that had in its personnel a considerable number of the members of the constitutional convention is forcefully pointed out in *City of Indianapolis* v. *Navin,* 151 Ind. 139, 41 L. R. A. 337. The validity of such enactments as the one last mentioned has been a number of times assumed by this court before the decision in the Florer case. *Matter* v. *Campbell,* 71 Ind. 512; *Wasson* v. *First Nat. Bank,* 107 Ind. 206; *City of Indianapolis* v. *Vajen,* 111 Ind. 240; *Moore* v. *Hewitt,* 147 Ind. 464. In the Florer case the question was directly in judgment, and we must overrule that decision if we depart from our previous ruling in this case that the taxation law of 1899 is valid.

We will now call attention to a few authorities on the subject of mortgage deductions not cited in our previous opinion. The legislature of Oregon passed a law which provided for a taxation of real estate mortgages at the *situs* of the land, and authorized the deduction of the amount of such mortgages from the tracts of real estate to which they respectively attached. The constitution of Oregon upon the subject of taxation is in every material particular a precise counterpart of our constitutional provision on the subject; yet it was held in *Crawford* v. *Linn County,* 11 Ore. 482, 5 Pac. 738, upon a full consideration of the question, that the statute was valid. The statute referred to is the same one that the Supreme Court of the United States, in *Savings, etc., Society* v. *Multnomah Co.,* 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803, held did not deny the equal protection of the laws. The case of *State* v. *Runyon,* 41 N. J. L. 98, is to a considerable extent in point. In the year

1876 the legislature of New Jersey enacted a statute that provided that mortgages upon real estate should not be taxed unless the mortgagor made a claim for a deduction on such account. In that event, if the claim was allowed by the assessor, the mortgage was taxed at the *situs* of the land. In passing upon the validity of that law, the court, in the case cited, speaking by Depue, J., said: "Independent of constitutional restrictions and prohibitions, the legislature is the sole judge of the propriety of taxation. It may select and define the sources from which the public revenue shall be derived, and prescribe the means by which taxes shall be laid, levied, and collected. Perfect equality in taxation is a good that is unattainable, and will be so long as the instruments of government are imperfect. The framers of the constitutional amendments did not aim at the impossible. They contented themselves with the accomplishment of so much of good as was attainable under the single requirement that 'property shall be assessed for taxes under general laws and by uniform rules, according to its true value'. In other respects, the legislative power over taxation was left unimpaired. If property be such in its nature as, upon ordinary principles of taxation, to be capable of having a two-fold *situs* for taxation, the legislature may select either as the place where the tax shall be laid. Chattels considered under the legal classification of personalty, follow the person of the owner, and yet chattels may be so localized in use as to be taxable at the place where they are situate, as against the owner who resides elsewhere within the state. *State* v. *Falkinburge,* 3 Green 320. A mortgage possesses the same dual characteristics. The debt of which the bond is the representative is a chose in action which has no locality, and will follow the residence of the owner. The mortgage, as security for the debt, is a conveyance of a qualified interest in the mortgaged premises, and creates an estate in lands.  *  *  *  The legislature may, I think, select, as the *situs* of taxation of mortgages, either the political

State, *ex rel., v.* Smith.

division where the owner resides, or that in which the mortgaged premises are situate." It must be admitted, of course, that the constitution of New Jersey does not require all property to be taxed, but the point in the case lies in the fact that it recognizes the right of the legislature, when it determines to tax lands, to permit mortgage values to be deducted therefrom, notwithstanding the requirement that property is to be assessed at its "true value".

We are not led to doubt whether the conclusion we have reached is right because of the contention under former legislation taxes have not been treated as debts which the owner was bound to pay. As before shown, they may be so treated, and we must regard the statute as a legislative recognition of the fact that, substantially speaking, the burden is upon the owner. Nor can we accept the view that the enactment in question is sporadic, and therefore to be treated as a legislative misfit in our system of taxation. In *Lutz* v. *City of Crawfordsville,* 109 Ind. 466, 468, the court said of the construction of statutes enacted at different times, but upon the same subject-matter: "If the legislature manifests an intention to create a system for the government of any subject, it is the duty of the court to effectuate that intention by such a construction as will make the system consistent in all its parts, and uniform in its operation. It would violate all rules of logic, as well as settled principles of law, to dissect the system into parts and assign effect to each part irrespective of its effect upon the uniformity and consistency of the entire system. Statutes are to be construed as part of a uniform system, and such a scheme adopted as will give each part its appropriate place, and not destroy uniformity and harmony by cutting the system into disjointed and incongruous parts."

The authorities are against appellee on the subject of classification. In addition to the authorities cited in the principal opinion, we cite *Edwards* v. *People,* 88 Ill. 340,

347, and *People* v. *Barker,* 155 N. Y. 330, 332, 49 N. E. 940. In the former case the supreme court of Illinois said: "It is also objected, that the revenue law is unconstitutional, because the method of assessing is not uniform. The fact that certain credits and deductions may be allowed in the assessment of personal property, does not establish a want of uniformity. Where a law operates alike upon all persons and property like situated, it may be regarded as uniform. This, as we understand our revenue law, is its practical operation. Perfect equality in taxation is a problem of difficult solution." In the New York case the court of appeals reached the same conclusion, but upon a somewhat different course of reasoning. The court said: "The right to have debts deducted from the value of taxable property is not an absolute one, but in the nature of a favor. The state may grant or withhold it at pleasure. It was in the power of the state to tax all the property the relator had without providing for any deduction on account of debts. It cannot, therefore, be said that a law which permits the deductions as to certain debts and forbids it as to other debts, violates any constitutional provision."

On the subject of classification it is not difficult to accumulate extreme statements made by courts in the condemnation of statutes that so offend, but it materially conduces to a more intelligent understanding of the effect of such decisions if such statements are read in connection with the enactments they condemn. But if we may venture to attempt to extract the cardinal principle from the many discordant opinions upon the subject of classification, we may say that it will be found that what they condemn is a classification that is arbitrary, because it is not founded on differences recognized by the constitution, or naturally inhering in the subject-matter of the legislation to an extent that would at least suggest some reason why the lawmaking power, acting in a presumed spirit of fairness, should have made the distinction. As stated before, we perceive in the

statute under consideration a substantial reason for distinguishing between mortgages or defeasible sales and mere liens.    And there is also a substantial reason for not permitting such deductions from personal property generally, since it is a fact, so well known as to be judicially recognized, that real estate bears more than its proportion of the burdens imposed by the State government.

The provision that not more than one-half of the assessed value of the property shall be allowed as a deduction is not arbitrary, although some mortgagors may gain a greater benefit from the law than others.    There is a basis in reason for such requirement, in that a wise public policy is conserved by an enactment that, even if it releases a property owner from a part of the burden of taxation, still leaves him some portion of such burden, because his vote or influence is by that consideration likely to be cast on the side of holding public officers to due economy in the administration of public affairs.    In Cooley on Taxation, p. 170, it is said: "Even within the class taxed, however, there may be rules of distinction; and these are perfectly admissible, provided they are general rules and are observed."

While the fact that the result of the upholding of this law may be to take millions of dollars worth of property from the State's assessment sheet has caused us to consider this case with great care, yet we cannot strike down the law for that reason.    The question is political in its character, and, if the act is inimical to the interests of the State, the argument mentioned should be addressed to the General Assembly.

The petition for a rehearing is overruled.    All concur, except Dowling and Monks, JJ., who dissent.