Fesler, Auditor, et al. *v.* Bosson et al.

[No. 23,803. Filed July 7, 1920. Rehearing denied October 13, 1920.]

1. Taxation.—*Enjoining Horizontal Increase.—Effect on Original Assessment.*—Under a showing that property had been originally assessed at its true cash value as provided by law, and the sole question involved in an injunction was the validity of a proposed horizontal increase of the assessment on the property, subsequently ordered by the state board of tax commissioners, a judg-

ment may be enforced against such order of the board without affecting the original assessment. p. 490.

2. INJUNCTION.—*Relief from Void Tax Assessment.—Cloud on Title. —Multiplicity of Suits.*—Under a showing that the property of numerous owners had been originally assessed at its cash value by local taxing officials, as provided by the Tax Law, Acts 1919 p. 198, and subsequently the state board of tax commissioners entered an alleged void order horizontally increasing the assessment thereon, which, if allowed to be placed on the tax duplicates, would cast a cloud on the title to the lands of such owners, and it appearing that a resort to the refunding provisions of the law would raise a question on their right to relief as to township taxes, and would entail a multiplicity of suits, the requirement of a showing of especial necessity for equitable relief is met, and injunction is a proper remedy as against such order. p. 490.

3. STATUTES.—*Construction.—Rules.—Ambiguity.*—A statute making plain the purpose and intention of the legislature requires no construction, but if it is uncertain or ambiguous, the courts in construing it will follow well-settled rules. p. 491.

4. TAXATION.—*Statute.—Validity.*—The provisions of Art. 1, §10, of the Constitution requiring uniformity and equality as to rate and assessment, and a just valuation, in tax legislation are interlocking and mandatory, and form the basis for a valid tax law. p. 492.

5. TAXATION.—*Power of State Tax Board.—Conclusiveness of Order.*—A decision of the state tax board made within the scope of its authority in fixing assessments is final, except under circumstances where relief may be granted by the courts. p. 493.

6. TAXATION.—*Right Purely Statutory.*—Taxes cannot be imposed, nor their collection enforced, except in the manner prescribed by law. p. 494.

7. CONSTITUTIONAL LAW.—*Taxation.—Legislative and Judicial Power.—Power of State Tax Board.*—The state tax board cannot under tax legislation usurp the functions of the legislature, nor can the legislature confer upon such board the power of final judicial action, the judicial interpretation of such legislation being for the judiciary. p. 494.

8. TAXATION.—*Equalizing Assessments.—Powers of County and State Tax Boards.*—Sections of the Tax Law, Acts 1919 p. 198, prescribing the duties and powers of county and township officials for the assessment of all property to be assessed by them, including provisions giving to aggrieved parties, political divisions or taxing units the right of appeal, provide full and complete machinery for equalizing assessments in counties; and the powers and duties of the state board over assessments, except those

which such board has original authority to make, begin with the conclusion of the work confided by the law to the sound judgment of the county board of review. p. 496.

9. TAXATION.—*Horizontal Increase.*—*Power of State Tax Board.*— An order by the state tax board at its third extended session horizontally increasing assessments in the taxing units of a county, which order had nothing to do with appeals from the county board of review, nor with assessments brought to the board's attention by the county auditor, cannot be sustained on the theory that the state board had authority to equalize assessments in the various units of a county under §171 of the act, Acts 1919 p. 198, giving the state board the power of the county boards of review, since such section is a re-enactment of a section of the former tax law, which had been construed by the Supreme Court as not conferring on the state board all the powers of county boards of review. p. 496.

10. STATUTES.—*Re-enactment.*—*Construction.*—The re-enactment of a section of a statute by the legislature, after a construction has been placed upon it by the Supreme Court, is strong, if not conclusive, evidence of the adoption by the legislature of such construction. p. 498.

11. TAXATION.—*Powers of State Tax Board.*—*Statute.*—Sections 181, 182, 186, 191 of the Tax Law, Acts 1919 p. 198, limit the action of the state tax board to a consideration of the assessments of the various counties, a determination of the counties in which the assessments appear to be too low, to fix a time when it will consider the matter of an increase of such assessments, and to certify to the auditor of each of such counties its determination to consider the increase of such assessments, stating whether the proposed increase pertains to real or personal property or both. p. 501.

12. TAXATION.—*Power of State Tax Board.*—*Rules.*—*Horizontal Increases.*—Since the state tax board has no power under the Tax Law, Acts 1919 p. 198, on its own motion at its fourth session to review and reassess, or assess originally, by horizontally increasing or decreasing the assessment of real or personal property in the various taxing units of a county, such board does not have power under paragraph 8 of §177 to make any rule purporting to give it such authority, nor to provide for other methods of assessment than those prescribed. p. 504.

13. CONSTITUTIONAL LAW.—*Judicial Power.*—*Construction of Statutes.*—*Public Convenience.*—Though courts cannot legislate. neither can they annul the intention and object of a clearly and plainly expressed legislative enactment, nor can they disregard all rules of statutory construction in order to uphold an act on the

theory of balance of convenience or because less injury would result by so doing. p. 506.

From Marion Superior Court (A7240); *Linn D. Hay,* Trial Judge.

Suit for injunction by William Bosson and others against Leo K. Fesler, auditor, and another. From a judgment for plaintiffs, the defendants appeal. (Transferred from the Appellate Court under §1394, cl. 2, Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*Ele Stansbury,* Attorney-General, *U. S. Lesh* and *Baker & Daniels,* for appellants.

*Emsley W. Johnson, Charles W. Smith, Charles Remster, Henry H. Hornbrook, Albert P. Smith, Paul Y. Davis, Samuel D. Miller, Frank C. Dailey, William H. Thompson, Sidney S. Miller* and *Albert L. Rapp,* for appellees.

MYERS, C. J.—This was a suit commenced by appellees, taxpayers of Washington township, Marion county, Indiana, for themselves and all other taxpayers residing outside of the limits of incorporated cities and towns in that township, to enjoin the auditor of Marion county, Indiana, from placing on the tax duplicate assessments based on an order of the state board of tax commissioners dated August 23, 1919, and from delivering the tax duplicate containing the assessments as increased by such order to the treasurer of Marion county, and to enjoin the treasurer from collecting the taxes based upon that order.

The complaint was in one paragraph. The answer was in three paragraphs, the first of which was a general denial, and the second and third averred affirmative facts to which a demurrer for want of facts was addressed and overruled. The issue submitted to

the court for trial was formed by the complaint, answers and reply in denial. Trial and judgment in favor of appellees. Appellant's motion for a new trial was overruled.

As we read this record, two questions control the decision of this case: (1) May appellees maintain this suit? (2) Was the order of August 23, 1919, without authority of law and void?

I. The complaint in this case shows that these appellees, and more than 300 other taxpayers of Washington township, are similarly situated and similarly affected by an alleged illegal and void order of the state board of tax commissioners, made and issued on the pretense of equalizing the aggregate assessments of the various townships of Marion county, by horizontally increasing the assessment in Washington township of all lands and lots fifty per cent., all improvements thirty per cent., and all personal property, except certain specific items, fifty per cent. All of this property had been theretofore, and was then, assessed at its full true cash value; that at the same time and by the same void order the same classes of property in the incorporated towns in that township were only increased twenty per cent. above their true cash value. All the other townships, except one, were likewise increased in some amount; that such void assessment, if allowed to go on the tax duplicates, will cast a cloud upon the title to the real estate of appellees and all other owners of real estate in the township. It is further made to appear that appellants, as auditor and treasurer of Marion county, respectively, were actively preparing to carry out the command of such void order and to enforce the payment of taxes accruing upon such increased void assessments.

From this brief reference to the complaint, its theory is apparent. Hence it may be said, as claimed by appellants, that the tax refunding 'statutes of this state afford these taxpayers a legal remedy, and, this being true, a suit in equity will not lie. In making this claim we are convinced that appellants have overlooked the theory or dominant facts of the complaint, and the law covering the refunding of taxes.

Sections 332 to 334, both inclusive, of the 1919 Tax Law, Acts 1919 p. 198, are the tax refunding sections of that law, and it will be noticed that, while provisions have been made for a refund of state and county taxes paid on property wrongfully assessed, there is no express provisions for the refunding of township taxes which are necessarily involved in the present challenged assessment. So that, if these taxpayers—more than 300 in number—were referred to a law court for relief against a void assessment, a question at once would arise as to their right to have refunded the township's proportion of the taxes paid. See *Durham* v. *Board, etc.* (1884), 95 Ind. 182. But aside from this question, such claimants would be met by the force of the last proviso of §332, *supra,* which provides: "That no taxes shall be considered as having been wrongfully paid or as having been wrongfully assessed when same were extended on assessments made as the judgment of taxing officers authorized to make same, and concerning which no complaints were registered at the time same were made either by application for rehearing or by an appeal." We express no opinion on the force and effect of this proviso. It is enough to say that, under the facts here shown, if the taxpayer should be referred to his legal remedy under §332, a multiplicity of actions, in all probability, would be the result.

In the instant case we are concerned with an alleged void order directed to the local taxing officers, which is claimed not to have been made by taxing officers authorized to make the same. Appellees concede that their property is subject to taxation based upon an assessment at its true cash value on March 1, 1919, and allege that it was so assessed, independently of the horizontal raise as ordered by the state board. Appellants do not affirmatively controvert the "true cash value" allegation of the complaint. They admit that appellees' property was assessed by the township assessor, which assessment was in due course presented to the county board of review and acted upon by that body in all things as provided by law. Hence the validity of the proposed specific level assessment made by the state board of tax commissioners, on property already assessed as provided by law, is the sole controversy between the parties hereto. It must be conceded that the question thus presented may be determined and the judgment of the court enforced, if need be, against the order for the specific and fixed increased assessment, without in anywise affecting the original assessment.

We are not unmindful of the broad proposition that there must be some ground for equitable interference before a suit of this character will lie, and of the further principle that such requirement is met upon a showing of an especial necessity for an early interference to prevent an alleged void assessment from being placed on the tax duplicate, thereby in a sense clouding the title to appellees' land, or by a showing that the remedy at law would not be as plain, complete, adequate and efficient to the ends

of justice and its prompt administration as the remedy in equity. In this case we conclude that an' especial necessity for an early interference is shown; that the remedy at law is not as efficient as the remedy in equity; and that appellees are entitled to the process and judgment of a court of equity to prevent a multiplicity of actions. *Yocum, Auditor, v. First Nat. Bank, etc.* (1896), 144 Ind. 272, 43 N. E. 231; *State Board, etc.* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826; *First Nat. Bank, etc.* v. *Brodhecker, Treas.* (1894), 137 Ind. 693, 37 N. E. 340; *Grossman* v. *City of Indianapolis* (1909), 173 Ind. 157, 88 N. E. 945, 89 N. E. 862; *Meyer* v. *Town of Boonville* (1904), 162 Ind. 165, 70 N. E. 146; *McAfee* v. *Reynolds* (1891), 130 Ind. 33, 36, 28 N. E. 423, 18 L. R. A. 211, 30 Am. St. 194; *First Nat. Bank* v. *Savin* (1911), 47 Ind. App. 266, 272, 94 N. E. 347; *Gray* v. *Foster* (1910), 46 Ind. App. 149, 153, 92 N. E. 7; *Greene, Auditor,* v. *Louisville, etc., R. Co.* (1917), 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E 88; 10 R. C. L. 277, 278, 279, 281.

II. This case, upon its merits, involves an examination of various sections of the 1919 Tax Law, *supra.* The meaning of these sections and the authority thus conferred upon the state board of tax commissioners forms the basis for the several contentions urged by the parties to this appeal. It is conceded by both sides that the 1919 act, *supra,* repealed all former laws on the general subject of taxation.

Before proceeding to the act in question, it will not be out of place for us to refer to §1, Art. 10, of the Constitution of Indiana, not that it is controlling of the question here for decision, but in the belief that its provisions should be kept in mind

as bearing on the legislative intent. We must assume that these constitutional provisions were in the legislative mind at the time the present tax law was passed. Consequently, the language, ''uniform and equal rate of assessment and taxation,'' and ''such regulations as shall secure a just valuation for taxation,'' must be regarded as furnishing the rule governing the present tax legislation. However, the words chosen by the legislature must be indicative of its intention, and they mark the line beyond which we cannot go. A statute making plain the purpose and intention of the legislature requires no construction, but, if it be uncertain or ambiguous in meaning, the courts may be called upon to construe it, and in so doing they will follow well-settled rules for that purpose. *Starr* v. *Board, etc.* (1907), 40 Ind. App. 7, 76 N. E. 1025, 79 N. E. 390.

As will hereafter appear, there is no room for judicial construction of any statutory provision involved by this appeal. From the constitutional provisions to which we have referred, three basic propositions stand out in bold relief: (1) Uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation. Each of these propositions are interlocking and mandatory. They are the constitutional basis of a valid tax law.

The instant case, as finally submitted to this court, does not challenge the law. No question of ''due process,'' or of estoppel, or of irregularity of action, is necessarily before this court as a basis for any discussion or decisive action. Thus we face the clean question of power in the state board to issue the questioned order.

The facts in this case are practically undisputed. The showing made suggests an unjust valuation, or at least an overvaluation, of the Washington township property to the extent of the proposed horizontal increase, if it is allowed to stand. This showing may not have resulted from any fault of the law, but from the manner of its administration, or from a mistaken judgment as to the true cash value of the property thus assessed. These are questions in which we are not now concerned, and we express no opinion thereon. However, in the case of *Reagan* v. *Farmers' Loan, etc., Co.* (1894), 154 U. S. 362, 390, 14 Sup. Ct. 1047, 1051, 38 L. Ed. 1014, it is said: ''A valid law may be wrongfully administered by officers of the state, and so as to make such administration an illegal burden and exaction upon the individual. A tax law, as it leaves the legislative hands, may not be obnoxious to any challenge, and yet the officers charged with the administration of that valid tax law may so act under it in the matter of assessment or collection as to work an illegal trespass upon the property rights of the individual.''

The state board of tax commissioners is one of the instrumentalities provided by the state for the purpose of raising revenue by way of taxation to meet governmental expenses. The decision of the state board in making assessments within the scope of its authority is final, except under circumstances where relief may be granted by the courts. The powers of the state board to assess property are prescribed by statute. *Hyland, Auditor,* v. *Brazil Block Coal Co.* (1891), 128 Ind. 335, 341, 26 N. E. 672. Hence such board must be able to support its action by statutory authorization.

The settled law in this state is that taxes cannot be imposed, nor their collection enforced, except in the manner prescribed by law. *Hamilton* v. *Amsden, Treas.* (1882), 88 Ind. 304; *State, ex rel.* v. *Illyes* (1882), 87 Ind. 405; *Scott* v. *Barr* (1915), 57 Ind. App. 508, 106 N. E. 891; *State Board, etc.* v. *Holliday, supra,* 221.

The state board cannot usurp the functions of the legislature, nor can the legislature confer upon such board the power of final judicial action on the tax and revenue laws of the state (§177, par. 2), for the reason that the judicial interpretation of such laws is for the judicial department of the state.

The present tax law, §3, fixed, in conformity with our constitutional provision, the "true cash value" as a just valuation for taxation of all property in the state subject to taxation. Of course, "true cash value" of property, regardless of the class to which it belongs, except such as the state board of tax commissioners shall originally assess, must of necessity in the first instance be left to the judgment of the township assessor (§61), but his judgment is not conclusive. It may be, and is, reviewed by the county board of review, a body organized and mandated by statute (§164) to assess, review and equalize assessments of all property in the county subject to taxation, other than property originally assessed by the state board of tax commissioners. It is made the positive duty of the county board to pass upon each valuation as returned by the township assessors of the county, correct, adjust and equalize the same so that the valuation thereof will be just and equal, and with the ultimate purpose and object that all property within its

jurisdiction shall be assessed or valued for taxation at its true cash value.

By §168 it is the further duty of the county board of review to ''inquire as to the valuation of the various classes of property in the respective townships and divisions of the county, and to make such changes, whether by way of increase or decrease, in such valuation as may be necessary to equalize the same in or between the townships or divisions of townships, or any taxing unit, and to determine the rate per cent. to be added or deducted in order to make a just and equitable equalization in the respective townships and divisions, so as to conform throughout the county to a just and equitable standard, reference being had to the natural and artificial characteristics and surroundings, and other elements of value. Such board shall also have power, in proper cases, to reduce or increase the valuation of any particular tract or lot. * * * The board shall have no power to reduce the aggregate valuation of all the townships below the true cash value, nor increase the same beyond the amount actually necessary for a proper and just equalization. If the board shall find the aggregate assessment is too high or too low, or is generally so unequal as to render it impracticable to equalize the same, it may set aside the assessment of the whole county, or of such township or townships or taxing unit therein, and order a new assessment, with instructions to the assessors to increase or diminish the aggregate assessment of their respective townships or taxing unit in such amount as the board may deem right and just and consistent with law.''

The foregoing sections, with others, furnish the procedure, and prescribe the duties and powers of

township and county taxing officers for the
8.   assessment of all kinds of property by them to
be assessed, including the equalization of assessments between townships or other taxing units within the county, beginning with the first step—furnishing township assessors, by the county auditor, with books, lists and schedules provided for by §66—and concluding with the last step—final action by the county board of review. The system thus provided includes provisions giving individuals, political divisions and taxing units of a county, feeling aggrieved, the right of appeal to the state board of tax commissioners. It will thus be seen that the machinery for equalizing assessments in counties is full and complete.

The powers and duties of the state board over the assessment of property, except such property as it is authorized to assess originally, begin with the conclusion of the work confided by law to the sound judgment of the county board.

Section 171 provides for four sessions of the state board each year, and expressly points out the business to be transacted by it at each of these sessions.

The order in question was made by the state board at its extended third session. There is no question
before us concerning any action of the state
9.   board at its first, second or fourth sessions.
The state board justifies its action on the theory that the questioned order was its conclusion reached upon matters properly before it at its third session. The statute with reference to the business to be transacted at its third session reads as follows: "It shall reconvene on the Monday next succeeding said second session for the purpose of hearing appeals and for

reviewing and reassessing all property certified by the county auditor as hereinafter provided, and for the purpose of equalizing the assessment of all property, real or personal, the assessment or equalization of which, by said board, is provided for by law. It shall remain in session such length of time as the business may require but not later than the third Monday in August at which time said session shall adjourn.'' Section 186 authorizes an extension of this session, ''For the purpose of hearing and determining the matter of such proposed increase in assessments the third session of the state board of tax commissioners may be extended such length of time as its business may require, not exceeding ten days.''.

It is not claimed that the order so made had anything to do with appeals, or with property brought to the board's attention by the Marion county auditor for review and reassessment. Consequently the board's action in making the order can be sustained on no other theory than that of power to equalize the various taxing units of a county. It claims that power and points to the sentence, §171, ''The said state board of tax commissioners is hereby given the power given to county boards of review.''

We have heretofore referred to the duties and powers of county boards, also the statute governing the state board at its third session, and its extended session, and the sentence relied on for its authority to make the order, all of which were a part of the old law re-enacted into the new law without any material change.

The claim that the state board is given the same powers as county boards has been fully considered and passed on by this court in the case of *Jones,*

*Treas.,* v. *Rushville Nat. Bank* (1894), 138 Ind. 87, 91, 37 N. E. 338, 339, where it is said: "The provision conferring upon this board the powers possessed by the county boards of review was intended, we think, to confer such powers in cases where it had jurisdiction, either original or appellate, and was not intended to confer original jurisdiction over all property in the State. The limited time within which the state board of tax commissioners is required to transact the business confided to it would seem to preclude the idea that it was the intention to confer on it jurisdiction so extensive as that contended for by the appellant, for we must know, as matter of common knowledge, that it would be impossible, in that short time, to review any considerable number of the numerous tax lists made out in a populous State like this. The imperfect manner in which the work would, of necessity be done, for want of time, we think, be more likely to result in injustice than to secure an equal and just valuation. For these, as well as for many other reasons which might be given, we are of the opinion that it was not the intention of the General Assembly to confer on the State Board of Tax Commissioners original jurisdiction over the class of property to which this suit relates."

The legislature's re-enactment of the language thus construed is strong evidence, if not conclusive, that it adopted the construction placed upon it by this court. *Ward* v. *State* (1919), 188 Ind. 606, 125 N. E. 397, and cases cited. If the state board is not given all the powers of county boards, and, following the Jones case, we so hold, then there is no provision in §171, *supra,* giving the state board power upon its own motion to equalize the various

taxing units of a county by means of horizontal assessments.  This being a case of equalization of less than county unit assessments, we are not now concerned with the powers of the state board to make original assessments, review or reassess.  We are interested in knowing what the legislature meant by the phrase "provided for by law" in connection with the equalization of assessments of all property, "real or personal."

The record before us shows beyond question that the board, in making the order for the horizontal increase, acted upon what it regarded as apt provisions of §171 and the sections to which we will now give attention.

Section 181 authorized the board to equalize both real and personal property as between counties.  In the performance of this duty it is called upon to "determine the counties in which the assessment of the real estate or personal property, or both, appear to be too low, fix a day or days in their next succeeding session in the same year,  *   *   *   when it will consider the matter of the increase of such assessments, and make an order directing the manner in which a hearing may be had with reference thereto,  *   *   *. The said board shall certify to the auditor of each of such counties the fact of the determination of said board to consider the matter of the increase of such assessments, stating whether the increase to be considered appertains to real or personal property or both and naming the day on which a hearing may be had."

Section 182 provides that the board shall give notice of such proposed increase of assessments.  The manner of giving notice may be "by posting a writ-

ten or printed statement of the time, place and object of said hearing at the door of the courthouse in said county.''

Section 184 reads as follows: ''At the time fixed for such hearing any representative of the board of county commissioners of any county and any taxpayer of any county to be affected by any proposed increase of assessment may appear in person or by attorney and be heard with reference thereto.''

Section 185 provides that: ''After the hearings hereinbefore provided have been concluded such board shall proceed to equalize the assessments of property in the various counties of the state as by law provided, but no increase of any assessment of either the real or personal property of any county shall be made where notice has not been given as herein provided. In determining what, if any, increase in assessment shall be made such board shall take into account the valuation of similar property in other counties and shall as far as practicable make the valuation uniform.''

It will be remembered that §186 makes provision for extending the third session for the purpose of determining the matter of such proposed ''increase in assessments.'' It is obvious that the extension thus granted contemplates the giving of time for the purpose of making ''increase in assessments'' as provided in §181.

The record before us furnishes conclusive evidence that the board, in making the order of equalization as between the various taxing units of Marion county, followed the procedure and acted upon the supposed authority given it by the five sections last mentioned. It appears that the board at its second session, after

receiving from the county auditors of the state an abstract of the assessments as called for by §191, thereupon determined that a revision of assessments in a number of counties in the state should be made in this respect following the provisions of §181. It thereupon gave notice by posting, as it might do under §182, specifying who may be heard with reference thereto, as provided in §184, and final action by issuing the contested order, §185, at its extended third session, §186.

It will be noticed that these several sections expressly and clearly limit the board's action: (1) To a consideration of the assessments—real estate and personal property—of the various counties in the state; (2) to a determination of the counties in which the assessment of the real estate or personal property, or both, appears to be too low; (3) fix a time when it will consider the matter of the *increase of such assessments;* (4) to certify to the auditor of each of such counties its determination to consider the *increase of such assessments,* stating whether the proposed increase pertains to real estate or personal property, or both.

Speaking of the instant case, the only business properly before the board at its extended session *was the equalization of assessments between counties,* by an increase of the assessments of the several counties which in the judgment of the board, was too low. For that purpose, and that alone, the mandate of the legislature requiring the board to adjourn on the third Monday in August might be postponed for a time not exceeding ten days. No mention is made as to equalization between the taxing units of a county.

Appellants' position cannot be sustained for the further reason that the legislature has furnished the

state board with plain and definite rules to be followed at the hearing provided for in §185, and to which its attention is therein directed by the phrase "as by law provided." These rules appear in the present tax law as §§192 to 196, both inclusive, and are stated as clearly and concisely as the English language will permit. These sections are a part of the law. They are the law to which reference is made by the phrase "provided for by law," which is a part of the clause "equalizing the assessment of all property, real or personal, the assessment or equalization of which, by said board, is provided for by law." (§171). For by §192 it is provided that, in equalizing the valuation of property as listed and assessed in the different counties, the board "shall consider the following classes of property separately, viz.: Railroad property, lands, town and city lots and personal property, and upon such consideration determine such rates of addition to, or reduction from the listed or assessed valuation of each of said classes of property in each county, or to or from the aggregate assessed value of each of said classes in the state, as may be deemed by the board to be equitable and just."

Thus the board is directed as to the classes of property to be considered, but in making the equalization (§193) it deals with the counties, not townships, by raising or lowering the valuation, as the facts may require.

The posted notice of the meeting held, at which the questioned order was made, reads as follows:

"Notice to Taxpayers.
"Indianapolis, Indiana, July 10, 1919.
"The taxpayers of Marion County, Indiana, are hereby notified that the State Board of Tax Com-

missioners has fixed the 11th day of August, 1919, at 9:30 a. m., at the office of said Board, Room 34, State House, Indianapolis, Indiana, for the consideration of the assessments of both real and personal property in Marion County, and for the purpose of considering the matter of increasing the assessments of either or both real and personal property in said county, and to determine the rates of addition to or reduction from the listed or assessed valuation of said property in said county.

"At such hearing any representative of the Board of County Commissioners, or any taxpayer of said county, may appear in person, or by attorney, and be heard.

"The taxpayers of the several townships and municipalities in said Marion County are further notified that at the time and place aforesaid, the State Board of Tax Commissioners will consider the assessment of both real and personal property in each township and municipality thereof, for the purpose of considering the matter of increasing the assessment of either or both real and personal property or any part thereof, and to determine the rates of addition to or reduction from the listed or assessed valuation of said property in each township and municipality in said county.

"At such hearings any representative of the Township Trustee or any taxpayer of any township or officer or taxpayer of any municipality may appear in person, or by attorney, and be heard.

"THIS HEARING HAS NOTHING TO DO WITH APPEALS FROM COUNTY BOARD OF REVIEW, OR THE HEARING

OF CASES CERTIFIED FOR REVIEW AND REASSESSMENT ON THE ORDER OF THE STATE BOARD OF TAX COMMISSIONERS.

"In witness whereof, we have hereunto set our hand this 10th day of July, 1919.

"(Signed) Fred A. Sims,
S. N. Cragun,
Philip Zoercher.
"State Board of Tax Commissioners.
"Attest: W. C. Harrison,
Secretary of Board."

From this notice it will be seen that the state board not only undertook to determine the question of equalization as between counties, but extended its considerations to the matter of equalizing the taxing units within the county by means of horizontal increases, varying in amounts as between the units as the judgment of the board might determine.

When the board assumed to equalize the various taxing units of the county at the time and in the manner here shown, it thereby exceeded its authority, in that it assumed to exercise statutory functions not within its powers or authority, either expressly or impliedly given to it by the state.

Appellant, further supporting its contention, refers us to the fact that on October 21, 1919, it adopted what it designated as Rule 9, whereby it decided that under its power to review and reassess, or assess originally any property, real or personal, or both, in the state, during its fourth session, it would review, among other things, horizontal increases made by it on application of any taxpayer aggrieved with its action. The board for its authority to pass this rule points to §177 paragraph 8, which

reads as follows: "To make such rules and regulations as the board shall deem proper effectually to carry out the purposes for which the board is constituted, and to make all necessary rules and regulations not inconsistent with law, as the board may deem necessary with respect to its own meetings and procedure"; and for its authority to horizontally increase the assessment of both the real estate and personal property of Washington township, or any other taxing unit less than a county, we are referred to §171 and to the language following: "And to review and reassess or assess originally any property, real or personal or both, in any taxing unit of the state."

Paragraph 8, *supra,* does permit the board to make rules and regulations, but it does not give authority to enact or amend the law, or to enlarge its duties or extend its powers beyond those given it by law. The legislature has determined the purposes for which the board was constituted, and made certain rules for its guidance. In so far as the legislature has prescribed rules, the board must comply with them, and the taxpayer has a right to rely on their being followed. However, for the orderly transaction of business confided to the board, and to enable it to perform the duties enjoined upon it by law, it may make rules and regulations not inconsistent with legislative action. There is not a section, paragraph, sentence, clause, phrase or word in the present tax law, save the sentence heretofore construed, that can, under any reasonable rule of construction be construed as giving the state board authority on its own motion at its fourth session to review and reassess, or assess originally, by *horizontally increasing or decreasing* the assessment of real or personal property, as was

done in this case. The jurisdiction of the board at its fourth session has been determined by the legislature, and any rule that the board might make purporting to give it additional authority, or providing for other methods for assessments, would be contrary to law and void.

The state board, in order to sustain its position, has devoted much time in the way of lengthy arguments in this court to the effect that its action here questioned should be sustained on the theory of balance of convenience, or, in other words, less injury would result from sustaining its action, right or wrong, than would follow its overthrow.

In this connection our attention is called to the effect of the result of this suit on the public revenue, and the confusion that must follow its collection 13. in case the decree of the lower court is sustained. The persuasive illustration furnished only serves to show how far-reaching and comprehensive was the result of this void order. If we were considering an irregularity, a different rule would apply from that which must be invoked and applied to void action. Courts cannot legislate, neither can they arbitrarily annul the intention and object of legislative action clearly and plainly expressed; neither can courts disregard all rules of statutory construction in order to uphold the action of a statutory board.

Finding no reversible error in the record, the judgment is affirmed.