The MAJESTIC STAR CASINO,
LLC, Petitioner,

v.

Booker BLUMENBURG, Jr., Township
Assessor of Calumet Township, Lake
County, Indiana, Respondent.

No. 71T10–0305–TA–24.

Tax Court of Indiana.

Nov. 12, 2004.

Timothy D. Hernly, Richard J. Deahl, Barnes & Thornburg, South Bend, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Linda I. Villegas, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Majestic Star Casino, LLC (Majestic Star) appeals the Indiana Board of Tax Review's (Indiana Board) final determination valuing its casino riverboat (riverboat) for the March 1, 1997 assessment date. The Court is presented with the following issues on appeal:

I. Whether the assessment of Majestic Star's riverboat as real property violates Article 10, § 1 of the Indiana Constitution;

II. Whether, in making its final determination, the Indiana Board arbitrarily withdrew the admissions of the Township Assessor;

III. Whether the Indiana Board erred in calculating the amount of physical depreciation applicable to Majestic Star's riverboat; and

IV. Whether the Indiana Board erred in calculating the amount of obsoles-

cence depreciation applicable to Majestic Star's riverboat?

## FACTS AND PROCEDURAL HISTORY

Majestic Star is an Indiana limited liability company that operates a casino riverboat—the Majestic Star II—on Lake Michigan. The Majestic Star II, launched in October, 1997, is harbored at Buffington Harbor in Gary, Indiana. The Majestic Star II shares a docking pavilion with another riverboat, the Trump Casino.

While the Majestic Star II was being built, Majestic Star leased a smaller riverboat from a third-party to use in its operation.[1] This smaller riverboat, the Majestic Star I, was built in 1972 and had a certified carrying capacity of 1,900 people. Prior to its use by Majestic Star, the riverboat had been used as a dinner cruise boat in Pennsylvania; accordingly, Majestic Star had to make some modifications to the riverboat in order to convert it for use "as a stopgap while [the Majestic Star II] was under construction." (Pet'r Br. at 5.) More specifically, in early 1996 Majestic Star added navigational equipment, increased the vessel's electrical capacity (to handle the operation of gaming machines), and installed carpeting. Majestic Star operated the Majestic Star I from June of 1996 through October of 1997.

For the March 1, 1997 assessment date, the Calumet Township Assessor (Assessor) assigned the Majestic Star I an assessed value of $5,143,490. Believing that value to be too high, Majestic Star appealed its assessment to the Lake County Property Tax Assessment Board of Appeals (PTABOA). After conducting a hearing on the matter, the PTABOA reduced Majestic Star's assessment to $3,271,340.[2]

Still believing the assessment to be too high, Majestic Star timely filed a Petition for Review of Assessment (Form 131) with the State Board of Tax Commissioners (State Board). After conducting an administrative hearing on December 19, 2002, the Indiana Board subsequently issued a final determination denying Majestic Star's request for relief.[3]

On May 23, 2003, Majestic Star initiated an original tax appeal. The parties subsequently agreed to argue the case based on the administrative record as well as on their briefs. Accordingly, the Court heard the parties' oral arguments on July 15, 2004. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

This Court gives great deference to final determinations of the Indiana

---

1. Majestic Star chose to lease this smaller boat so that it could be competitive: while both Majestic Star and Trump Casino received their gaming licenses at the same time, Majestic Star's vessel, unlike Trump's, was not yet "water-ready." As counsel for Majestic Star later explained:

 So, as opposed to allowing the Trump Boat, which would be located immediately on the other side of the dock, in order to prevent them from opening and basically stealing the show of being the only casino operator at Bu[ff]ington Harbor and having the recognition as the developer of the property, Majestic Star ... leased a boat[.]
 (Oral Argument Tr. at 5.)

2. The PTABOA's reduction was based on the removal of a grade adjustment. (*See* Cert. Admin. R. at 40). The reduction is not contested in this appeal.

3. On December 31, 2001, the legislature abolished the State Board of Tax Commissioners (State Board). 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Indiana Board of Tax Review (Indiana Board) as "successor" to the State Board. IND.CODE ANN. §§ 6–1.5–1–3; 6–1.5–4–1 (West Supp.2004); 2001 Ind. Acts 198 § 95. Thus, the Indiana Board conducted the hearing on Majestic Star's appeal and issued the final determination thereon.

Board. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals,* 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West Supp.2004). The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Township Assessor v. Elkhart Maple Lane Assocs., L.P.,* 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

## Discussion

Majestic Star has raised several issues for this Court's review. Each of those issues will be addressed in turn.

**4.** The Indiana Gaming Commission has statutory authority to issue licenses to conduct riverboat gambling within the state. *See* IND. CODE ANN. § 4–33–3–1 (West 1997); IND.CODE ANN. § 4–33–6–1 (West 1997) (amended 2003). No more than eleven licenses may be issued at any one given time-five licenses are allocated for operation on Lake Michigan, five for the Ohio River, and one for Patoka Lake. *See* A.I.C. § 4–33–6–1.

**5.** Article 10, § 1 of the Indiana Constitution—the Property Taxation Clause—provides:

## I. Article 10, § 1

In Indiana, a "riverboat" is statutorily defined as "a self-propelled excursion boat . . . on which lawful gambling is authorized and licensed[4] under [Indiana Code § 4–33]." IND.CODE ANN. § 4–33–2–17 (West 1997) (amended 2003) (footnote added). Generally, a riverboat must be able to carry at least 500 passengers and be at least 150 feet in length. IND.CODE ANN. § 4–33–6–6 (West 1997) (amended 2003). For purposes of taxation, a riverboat is classified as "real property" and therefore taxable as such. IND.CODE ANN. § 6–1.1–1–15(5) (West 1997) (amended 2003).

In contrast, "a watercraft which is [merely] engaged in commerce" is classified as a "commercial vessel" and is not taxed as real property. IND.CODE ANN. § 6–6–6–1 (West 1997); IND.CODE ANN. § 6–6–6–7 (West 1997). Instead, a commercial vessel is subject to a tonnage tax, imposed at the rate of three cents ($.03) per net ton. A.I.C. § 6–6–6–7; IND.CODE ANN. § 6–6–6–2 (West 1997).

It is against this statutory backdrop that Majestic Star asserts that the assessment of the Majestic Star I violates Article 10, § 1 of the Indiana Constitution.[5] More specifically, it argues that

> [p]rinciples of uniformity and equality in assessment and taxation are violated when a taxpayer is assessed and taxed on a different basis compared to taxpayers with substantially similar property.

> The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. Art. 10, § 1(a). This constitutional provision is also codified at Indiana Code § 6–1.1–2–2 (West 2004) (stating that "[a]ll tangible property which is subject to assessment shall be assessed on a just valuation basis and in a uniform and equal manner").

It cannot be disputed in this case that [the] Majestic Star [I] is being assessed on a basis different from property with substantially similar physical characteristics. The only distinction between the [Majestic Star I] and a [commercial vessel] is whether [or not] the passengers on board the vessel engage in gambling[.]

\* \* \* \* \*

The classification in this case ... results in the "anomalous situation" in which property that may be physically indistinguishable from [Majestic Star's] is taxed at a tiny fraction of the [Majestic Star I] merely on the basis of the recreational or entertainment activities that take place on the boat. This is an "arbitrary distinction" not based on any physical differences inhering in the property in issue and not based on any difference in value.

(Pet'r Br. at 23, 25.) Consequently, Majestic Star asserts that Indiana Code § 6–1.1–1–15(5), which classifies riverboats as real property, is unconstitutional.

■ While the legislature has the broad power to tax, it does not have unfettered discretion in that power. *See State ex rel. Lewis v. Smith*, 158 Ind. 543, 63 N.E. 25, 26–27 (1902), *reh'g denied.* The Indiana Constitution, including Article 10, § 1, contains some limitations on the legislature's authority to tax. *State ex rel. Lewis v. Smith*, 158 Ind. 543, 64 N.E. 18 (Ind.1902) (stating that Article 10, § 1 is a "curb upon the authority of the general assembly"); *Smith*, 63 N.E. at 26 ("[t]he judiciary can afford no redress against oppressive taxation, *so long as* the legislature, in imposing it, shall keep within the limits of legislative authority, and violate no express provision of the constitution") (quoting Cooley, *Tax'n*, 5) (emphasis added); *Bielski v. Zorn*, 627 N.E.2d 880, 884–

85 (Ind. Tax Ct.1994) ("the legislature is duty-bound to follow the requirements of Article 10, § 1"). "What property shall be taxed, and how it shall be taxed, are legislative questions, so long as there is uniformity and equality of rate as to those of the same class; and the subjects and methods of taxation are legislative matters, and cannot be disturbed so long as the method prescribed is applicable alike to all within the prescribed class." *Davis v. Sexton*, 210 Ind. 138, 200 N.E. 233, 241 (1936).

■ By taxing riverboats as real property and commercial vessels as something else, the Indiana legislature has created a statutory classification based upon whether gambling occurs on the vessel. This statutory classification is clothed with the presumption of constitutionality. *See State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1037 (Ind.1998) (*St. John V*). Consequently, Majestic Star bears the burden of proving otherwise, and all doubts will be resolved against it. *See id.* The Court will not hold the classification to be unconstitutional "simply because [it] might consider it born of unwise, undesirable, or ineffectual policies." *Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996) (*St. John II*) (citation omitted).

Article 10, § 1 of the Indiana Constitution requires: "(1) [u]niformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation." *Id.* at 326 (quoting *Fesler v. Bosson*, 189 Ind. 484, 128 N.E. 145, 147 (1920)). The purpose of these constitutional requirements is to distribute the burden of taxation upon the principles of uniformity, equality, and justice. *Florer v. Sheridan*, 137 Ind. 28, 36 N.E. 365, 369 (1894).

■ The limitation upon the legislature that taxation be equal can be satisfied "when there is no discrimination as be-

tween taxpayers." *Smith,* 63 N.E. at 27. This includes the requirement that "assessments be consistent with similar property of the same classification." *Harrington v. State Bd. of Tax Comm'rs,* 525 N.E.2d 360, 361 (Ind. Tax Ct.1988) (citing IND. CONST. art. X, § 1); *see also GTE North, Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 886 (Ind. Tax Ct.1994). "[W]hen, for any reason, [taxation] becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible." *Smith,* 63 N.E. at 27 (quoting Cooley, *Tax'n,* 169). Thus, if the legislature creates a classification within a statute, that classification must not be arbitrary. *State Bd. of Tax Comm'rs v. Lyon and Greenleaf Co.,* 172 Ind.App. 272, 359 N.E.2d 931, 934 (1977), *reh'g denied.* Consequently, in this case, Majestic Star must prove that the contested classification is not based upon differences naturally inhering in the property or in the subject matter of the legislation that creates the classification. *See St. John V,* 702 N.E.2d at 1042.

Historically, Indiana has strictly prohibited gambling. *American Legion Post No. 113 v. State,* 656 N.E.2d 1190, 1192 (Ind. Ct.App.1995). Nevertheless, the Indiana legislature legalized riverboat gambling in 1993. *See* IND.CODE ANN. § 4–33. In doing so, the legislature expressed its clear intent "to benefit the people of Indiana by promoting tourism and assisting economic development." IND.CODE ANN. § 4–33–1–2 (West 1997). More specifically, the legislature provided that the Indiana Gaming Commission was to issue riverboat licenses to those applicants "that promote the most economic development in a home dock area and that best serve the interests of the citizens of Indiana." IND.CODE ANN. § 4–33–4–1(a)(5) (West 1997) (amended 2003).

Riverboats utilize resources provided by local government. Most notable, perhaps, is their need for law enforcement supervision. *See* A.I.C. § 4–33–1–2 (stating that the legislature's goals in legalizing riverboat gambling "will be maintained only through [ ] comprehensive law enforcement supervision[ ] and [ ] the strict regulation of facilities, persons, associations, and gambling operations"). *See also, e.g.,* IND.CODE ANN. § 4–33–4–18 (West 1997) (amended 2003) (providing that the state police shall assist the Indiana Gaming Commission in conducting background investigations of riverboat licensee applicants). Riverboats also use local fire protection services, road and street maintenance services, water and utility services, etc.

The cost of local services and government is borne by individual property owners and businesses alike through the payment of property taxes. *See St. Mary's Med. Ctr. of Evansville, Inc. v. State Bd. of Tax Comm'rs,* 534 N.E.2d 277, 280 (Ind. Tax Ct.1989) (stating that a property tax exemption is strictly construed against a taxpayer and in favor of the State because it releases property from the obligation of bearing its share of the cost of government and serves to disturb the equality and distribution of the common burden of government upon all property) (quotation and citation omitted), *aff'd,* 571 N.E.2d 1247 (Ind.1991). There is perhaps no better way to promote economic development in an area than to insure that all bear their burden in sharing the cost of government through property tax payment.

The Indiana legislature has chosen to classify vessels, for purposes of property taxation, based upon whether gambling occurs on those vessels. While the reason for this treatment may not be based upon differences naturally inhering in the vessels themselves, it is most definitely based

upon differences naturally inhering in the subject matter of the legislation that creates the classification. In other words, the legislature legalized riverboat gambling in an effort to revitalize/promote/enhance the economy in local areas; by requiring riverboats like Majestic Star I to pay property taxes, revenue is pumped back into the local economy. *See Indiana Dep't of State Revenue v. Trump Indiana, Inc.*, 814 N.E.2d 1017, 1021 (Ind.2004) (acknowledging the legislature's "power to classify [riverboats] as [both] realty and [ ] as personalty to effectuate independent statutory schemes of taxation").

In addition, all taxpayers within this classification are treated equally. There is no artificial distinction between certain members of the class: all riverboats are subject to taxation as real property. Thus, the Court finds no violation of Article 10, § 1. *See St. John V*, 702 N.E.2d at 1042. The Indiana Board's final determination with respect to this issue is therefore AFFIRMED.

### II. Withdrawal of Admissions

Majestic Star next argues that the Indiana Board erred when, in making its final determination, it *sua sponte* withdrew matters deemed admitted by the Assessor

under Indiana Trial Rule 36. The facts relevant to this issue are as follows.

Prior to its administrative hearing before the Indiana Board, Majestic Star served the Assessor with requests for admission pursuant to Trial Rule 36.[6] Specifically, Majestic Star requested that the Assessor respond, within thirty days of service, to the following assertions: 1) that based on its actual age, the Majestic Star I was entitled to a 55% physical depreciation adjustment; and 2) that based on its numerous functional deficiencies which resulted in poor economic performance, the Majestic Star I was entitled to an 80% obsolescence depreciation adjustment. (*See* Cert. Admin. R. at 232, 234, 253–55.) (*See also* Pet'r Br. at 12–13.) The Assessor never responded to these requests for admission. Consequently, the matters contained within Majestic Star's requests for admission were conclusively established by operation of law. *See* Ind. Trial R. 36(A), (B).

At the Indiana Board hearing in December 2002, counsel for Majestic Star produced the requests for admission and requested that they be admitted into evidence. (*See* Cert. Admin. R. at 464–65, 481–82.) The Assessor did not object to

---

6. Trial Rule 36 provides, in relevant part:

 **(A) Request for admission.** A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(B) set forth in the request, including the genuineness of any documents described in the request.

 \* \* \* \* \*

 Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within a period designated in the request, not less than thirty [30] days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting

the admission a written answer or objection addressed to the matter, signed by the party or by his attorney.

\* \* \* \* \*

 **(B) Effect of admission.** Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.... [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

Ind. Trial Rule 36.

Majestic Star's motion. Nevertheless, when the Indiana Board issued its final determination on the matter in April of 2003, it "withdrew" the admissions, ruling that

> [a]t the administrative hearing, the [Assessor] testified contesting the issues contained in the Requests[.] The [Assessor's] testimony is sufficient to challenge the admissions deemed admitted, and to act as a motion to withdraw these admissions.

\* \* \* \* \*

Because the admissions deemed admitted contain core controverted issues and [Majestic Star] failed to demonstrate any prejudice by allowing their withdrawal, the admissions of the [Assessor and the PTABOA] are found to be withdrawn.

(Cert. Admin. R. at 55–56.)

 Majestic Star argues that the Indiana Board abused its discretion in withdrawing the Assessor's admissions. Majestic Star is correct for several reasons.

First, as support for its determination, the Indiana Board relied on a 1990 Indiana Court of Appeals opinion that held that "justice requires a trial court to allow withdrawal [ ] of admissions where the admissions involve core controverted issues and the opposing party fails to establish that he would be prejudiced thereby in maintaining his action on the merits." (Cert. Admin. R. at 55 (quoting *Gary Mun. Airport Auth. Dist. v. Peters,* 550 N.E.2d 828, 832 (Ind.Ct.App.1990)).) Nevertheless,

one year later, the Indiana Supreme Court issued an opinion "to provide guidance to the bench and bar" on Trial Rule 36 issues. *Gen. Motors Corp. v. Aetna Cas. & Sur. Co.,* 573 N.E.2d 885, 886 (Ind.1991), *reh'g denied.* In that case, the high Court explained that Trial Rule 36 was expansive enough to permit a request for admission regarding an opinion, a contention, or a legal conclusion. *Id.* at 888. Thus, the Indiana Board's reliance on the *Gary Municipal Airport* case for the proposition that Majestic Star's requests for admission were, somehow, "improper subject matter" is misplaced. *See id. See also Bryant v. County Council of Lake County,* 720 N.E.2d 1, 6 (Ind.Ct.App.1999) (stating that a motion to withdraw requests for admission is insufficient if it is based on a mere showing that the admissions go to the core issues to be litigated), *trans. denied; Corby v. Swank,* 670 N.E.2d 1322, 1325 (Ind. Ct.App.1996) (stating that a party's assertion that requests for admission were not proper because they addressed issues to be proved at trial was against the holding in *General Motors* ).

In addition, as the *General Motors* case explains, the very language of Trial Rule 36 limits the discretion of a trial court (or, in this case, the Indiana Board [7]) in ruling on a motion to withdraw admissions. Indeed, the adjudicating body cannot grant a motion to withdraw unless it determines that, first, "the presentation of the merits of the action will be subserved thereby and[, second,] ... that withdrawal [ ] will [not] prejudice [the party who obtained the admission] in maintaining his action or defense on the merits." [8] T.R. 36(B) (footnote added); *Gen. Motors,* 573 N.E.2d at

---

7. Parties to administrative hearings before the Indiana Board are entitled to use the discovery provisions of the Indiana Rules of Trial Procedure. IND. ADMIN. CODE tit. 50, r. 17–8–3(a) (2001).

8. Such a determination will protect against the binding effect of inadvertent admissions: [a]lthough an admission should ordinarily be binding on the party who made it, there must be room in rare cases for a different result, as when an admission no longer is

889. The test, however, requires an affirmative showing by each party. Indeed, the party seeking withdrawal of the admissions bears the burden of showing how the withdrawal would subserve the presentation of the case's merits; the party who has obtained the admissions bears the burden of demonstrating that it would be prejudiced in maintaining its action on the merits if withdrawal was permitted.[9] *Corby*, 670 N.E.2d at 1326 (footnote added).

In reviewing the administrative record, the Court finds that neither of these criteria was conclusively demonstrated. First, the Court notes that, at the outset, the Assessor made no motion—formal or otherwise—to withdraw his admissions. *Cf. Corby*, 670 N.E.2d at 1327 (stating that the party seeking withdrawal must actually make a motion for withdrawal). Even assuming that the Assessor's testimony at the hearing did constitute a motion to withdraw, the Assessor made no showing that the presentation of the case's merits would be subserved by the withdrawal. Indeed, he presented no evidence or indication that his failure to timely respond to

Majestic Star's requests for admissions was "an honest error" or "inadvertent." *See* fn. 8, *supra.* Likewise, he made no showing that Majestic Star was aware that he intended to contest the admitted issues at the Indiana Board hearing.[10]

On the "flip side," because the Assessor made no motion to withdraw his admissions, Majestic Star was never required to demonstrate that it would be prejudiced in maintaining its action on the merits if withdrawal was permitted. Thus, the Indiana Board put the cart before the horse when it expected Majestic Star to object to a motion when the motion was never made in the first place.[11]

Under these circumstances, the Court finds that the Indiana Board's withdrawal of the Assessor's admissions is clearly in error. *See Gen. Motors Corp.*, 573 N.E.2d at 889. Consequently, the Indiana Board's final determination with respect to this issue is REVERSED.

### III. Physical Depreciation

Majestic Star has challenged the Indiana Board's award of physical depreci-

---

true because of changed circumstances or through honest error a party has made an improvident admission. However ... [u]nless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated.
*Gen. Motors Corp. v. Aetna Cas. & Sur. Co.*, 573 N.E.2d 885, 889 (Ind.1991) (citations omitted).

9. Prejudice contemplated by Trial Rule 36 is not merely that the party will then be required at trial to prove the truth of the matters formerly admitted. Rather, "it means that the party has suffered a detriment in the preparation of his case. For example, prejudice ... may be shown where the party obtaining the admission is unable to produce key witnesses or present important evidence." *Corby v. Swank*, 670 N.E.2d 1322, 1326 (Ind.

Ct.App.1996) (internal citations and quotation marks omitted).

10. It appears from the administrative record that from the time the requests for admission were served on the Assessor until the day of the Indiana Board hearing, there was no communication between the parties.

11. Furthermore, it should not be presumed that just because Majestic Star presented the merits of its case at the Indiana Board hearing it was not prejudiced by the withdrawal of the admissions. Such a holding would defeat the very purpose of Trial Rule 36. Indeed, as the Supreme Court has explained, "[u]nless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." *Gen. Motors Corp.*, 573 N.E.2d at 889 (citation omitted).

ation to its riverboat for the 1997 assessment. More specifically, Majestic Star argues that because the riverboat had an actual age of 23 years as of the 1995 general reassessment, it was entitled to a 55% physical depreciation factor. The Assessor argues, however, that because Majestic Star made "renovations" to the vessel in 1996, it actually had an effective age of 13 years, and therefore the Indiana Board's award of a 40% physical depreciation factor was appropriate.

Pursuant to Trial Rule 36, however, the Assessor has admitted that the Majestic Star I is entitled to 55% physical depreciation. *See* Part II, *supra.* Consequently, the Indiana Board's final determination on this issue is REVERSED. The Court REMANDS the matter to the Indiana Board to instruct the local assessing officials to apply a 55% physical depreciation adjustment to the Majestic Star I.

### IV. Obsolescence

■ The final issue in this case involves the amount of obsolescence to which the Majestic Star I is entitled. Pursuant to Trial Rule 36, the Assessor has admitted that the Majestic Star I is entitled to an obsolescence adjustment of 80%. *See*

Part II, *supra.* Nevertheless, because Majestic Star subsequently argued at the Indiana Board hearing, as well as before this Court, that it was entitled to a 40.7% obsolescence adjustment, Majestic Star is limited to that amount. Consequently, the Indiana Board's final determination on this issue is REVERSED. The Court REMANDS the matter to the Indiana Board to instruct the local assessing officials to apply a 40.7% obsolescence depreciation adjustment to the Majestic Star I.

### CONCLUSION

For the foregoing reasons, this Court AFFIRMS the Indiana Board's final determination with respect to Issue I. The Indiana Board's final determination with respect to Issues II, III, and IV, however, is REVERSED. The Court therefore REMANDS those issues to the Indiana Board for proceedings consistent with this opinion.